2006 WY 81

**John LEWIS, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 05–42.**

Supreme Court of Wyoming.

July 11, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Nancy D. Conrad, Assistant Attorney General. Argument by Ms. Conrad.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] In December 2004, a jury found Appellant, John Lewis (Lewis) guilty of first-degree sexual assault and incest in the District Court of the Second Judicial District, Carbon County, Wyoming. Lewis appeals,

* Chief Justice at time of oral argument.

arguing that there was insufficient evidence to sustain a guilty conviction for first-degree sexual assault and that the prosecutor committed prosecutorial misconduct. We affirm.

## ISSUES

[¶ 2] Mr. Lewis presents two issues on appeal:

Whether there was sufficient evidence to sustain a conviction for first degree sexual assault[.]

Whether the prosecutor committed prosecutorial misconduct during closing argument.

## FACTS AND PROCEEDINGS

[¶ 3] In November of 2003, Lewis was living with his wife, their two-year-old son, and two of Lewis's stepchildren, a fifteen-year-old stepson and a four-year-old stepdaughter. Lewis's friend, Kenneth Meadwell, was also living with the family at that time. One night, Mr. Meadwell and Lewis were at the Lewis residence, drinking and watching movies. Mrs. Lewis left for work about 10:00 p.m., leaving Lewis, Mr. Meadwell, and the three children at the residence. Lewis and the four-year-old stepdaughter, CF, went to bed shortly after Mrs. Lewis left, while Mr. Meadwell continued to watch movies and drink in the living room.

[¶ 4] At trial, Mr. Meadwell testified that later that night he wanted to smoke a cigarette, but he could not find his cigarette lighter. Thinking that Lewis might have a lighter in his room, he opened Lewis's bedroom door and saw Lewis and CF naked on the bed and Lewis performing oral sex on CF.

[¶ 5] Mr. Meadwell retreated to the living room, grabbed a bottle of whiskey and took a drink, then returned to confront Lewis. On the way back to the bedroom, Mr. Meadwell saw CF in the kitchen wearing a dress and told her that she had done nothing wrong. He then went back to the bedroom where Lewis was talking on the phone to Mrs. Lewis. Mr. Meadwell picked up a baseball bat that was laying in the room. Lewis

handed the phone to Mr. Meadwell, who spoke with Mrs. Lewis, asking her if she wanted him to kill Lewis then or wait. Mrs. Lewis told Mr. Meadwell to wait. Mr. Meadwell threw down the phone, left the bedroom, grabbed the bottle of whiskey, and left the trailer.

[¶ 6] Mr. Meadwell walked around Rawlins for the rest of the night and returned to the residence the next morning. He found Lewis and his wife talking in their bedroom. Mrs. Lewis told Mr. Meadwell that she and Lewis were going to work things out between themselves. Mr. Meadwell eventually reported what he saw to the Rawlins Police Department.

## STANDARD OF REVIEW

### A. Insufficiency of the Evidence to Support First Degree Sexual Assault

[¶ 7] Wyoming case law clearly establishes the standard of review for a claim of insufficient evidence to support a jury verdict:

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996). We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. *Id.* (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)).

*Tanner v. State*, 2002 WY 170, ¶ 7, 57 P.3d 1242, 1244 (Wyo.2002) (citing *Williams v. State*, 986 P.2d 855, 857 (Wyo.1999)).

### B. Prosecutorial Misconduct

[¶ 8] Wyoming law also establishes the standard an appellant must meet in order to succeed on a claim of prosecutorial misconduct:

Allegations of prosecutorial misconduct are reviewed by referring to the entire record to determine whether a defendant's case has been so prejudiced that he has been denied a fair trial. *Dysthe v. State*, 2003 WY 20, ¶ 22, 63 P.3d 875, ¶ 22 (Wyo.2003). Whether or not any comment within a closing argument is improper is measured in the context of the entire argument. *Id.* Reversal is warranted only if a reasonable probability exists that without the error the appellant may have enjoyed a more favorable verdict. *Id.* The defendant has the burden of proof to prove this issue. *Id.*

*Moore v. State*, 2003 WY 153, ¶ 29, 80 P.3d 191, 198–199 (Wyo.2003).

## DISCUSSION

### A. Insufficiency of the Evidence to Support First Degree Sexual Assault

[¶ 9] Appellant argues that the evidence at trial was insufficient to support a verdict of first degree sexual assault. The relevant statute states:

(a) Any Actor who inflicts sexual intrusion on a victim commits sexual assault in the first degree if:

(i) the actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement.

Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2005). At the conclusion of the trial, the jury received the following instruction with respect to the first degree sexual assault charge:

1. On or about November, 2003
2. In Carbon County, Wyoming
3. The Defendant, John Lewis
4. Inflicted sexual intrusion on CF, and

5. The Defendant caused submission of CF

6. Through the actual application of physical force **or** forcible confinement

7. Which the Defendant reasonably calculated would cause submission of CF.

[¶ 10] Because part 6 of the instruction was presented to the jury with the alternative "force or forcible confinement" and the jury returned a general guilty verdict, we must determine if there is sufficient evidence to support a finding that Lewis caused submission of CF through application of physical force *and* that he caused submission of CF through application of forcible confinement. See *May v. State*, 2003 WY 14, 62 P.3d 574 (Wyo.2003); *Tanner v. State* 2002 WY 170, 57 P.3d 1242 (Wyo.2002); and *Bush v. State*, 908 P.2d 963 (Wyo.1995).

[¶ 11] The evidence presented at trial established that CF was four years old at the time of the assault. Lewis is CF"s stepfather, an adult male. Lewis and CF were in the bedroom with the door closed. When Mr. Meadwell opened the bedroom door, he saw Lewis and CF lying on the bed, both naked, and Lewis had his head between CF"s legs, performing oral sex. Mr. Meadwell described the look on CF"s face as "saying help." At trial, evidence was presented that it was the custom in the Lewis household to have the bedroom door closed, sometimes with children sleeping in bed with Mr. and Mrs. Lewis. Lewis essentially argues that because of this, the fact that the door was closed on the night in question does not show forcible confinement of CF.

[¶ 12] After considering the evidence presented at trial, we conclude that a jury could find that Lewis used force and forcible confinement to cause CF to submit to the sexual intrusion. Regardless of the custom of the household, the fact remains that the door was closed on the night in question, confining CF to the bedroom. CF was a four-year-old child, Lewis an adult male and CF"s stepfather. We hold that a reasonable jury could find that CF submitted to Lewis's intrusions due to the fact that he was physically forcing her to do so, and that he was forcibly confining her to the bedroom during the intrusion. See *Seeley v. State*, 715 P.2d 232, 240–241 (Wyo.1986); and 2 Wayne R. LaFave, *Substantive Criminal Law* §§ 17.3(a) at 620–24, and 17.4(c) at 648–651 (2003 & Supp.2006).[1]

[¶ 13] Our conclusions are bolstered by the inherent use of physical force or forcible confinement, or both, within every parent-child or caregiver-child relationship. The force or confinement used is most often gentle and loving and applied to protect or benefit the child. If a child resists having his diaper changed or being buckled into a car seat, a loving parent will use physical force or forcible confinement, or both, to change the diaper or secure the child in the seat. After experiencing this dynamic, the child soon learns that it is useless to resist because the adult will apply physical, albeit gentle, force or forcible confinement to cause the child to submit. Considering the relationship between CF and Lewis along with the evidence presented at trial, an inference that Lewis used physical force and forcible confinement is supported by the totality of the evidence.

[¶ 14] Lewis makes an additional argument urging this Court to follow case law in other jurisdictions, holding that the fact that an assailant is positioned "over" the victim during a sexual intrusion is not sufficient to show the element of forcible confinement. Because we find that the closed door, the discrepancy in age, size and strength, and the dynamics of the parent-child relationship

1. We acknowledge that Wyo. Stat. Ann. § 6–2–303(a)(v) (LexisNexis 2005) appears to more precisely define the crime that was committed here. However, we also recognize that the Legislature appears to have carefully worded these statutes so as to not preclude an application such as that which occurred here. Section 6–2–303(a) begins with the admonition that, "(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, *under circumstances not constituting sexual assault in the first degree; ..."* [the actor commits any one of the enumerated acts]. Although it is a close question, we will not second guess the prosecutor and the jury under these circumstances where the jury was informed not only of the second degree sexual assault statute, but also the third degree sexual assault statute. Thus, in light of all the evidence presented and the comprehensive instructions given the jury, we conclude that the evidence is sufficient to support the jury's verdict.

are sufficient to uphold the jury's verdict in this case, we decline to address this issue.

## B. Prosecutorial Misconduct

[¶ 15] During trial, a pediatrician from Rawlins who examined CF for physical evidence of sexual abuse testified that CF told her that Lewis put his finger in her private area while they were in the living room of the Lewis house. During closing argument, the prosecutor stated:

> So, what did they get him for? Contact? Absolutely. Intrusion? Let's talk about intrusion. Penetration, however slight. Now, what do we get that tells us there was any penetration whatsoever? We get the consistent statement of that little girl, it hurt, Daddy hurt me, it hurt. However slight. Doesn't take enough to leave scarring or bleeding or any of this, but it hurt. That's the description for intrusion. He put his finger in me, "in" being the key word.

Lewis argues that this statement by the prosecutor misled the jury as to what evidence could be considered as they came to a verdict, in effect creating a fatal variance by asking the jury to judge Lewis's guilt with respect to an incident separate from the incident with which he was charged.

[¶ 16] Adhering to the standard of review, in order to find that the prosecutor did commit prosecutorial misconduct, we must review the entire record and conclude that but for this statement by the prosecutor, Lewis would have received a more favorable verdict. Taking this statement by the prosecutor in the context of the entire record, we find that it did not so influence the jurors. Instead, the statement, although perhaps inartful, was the prosecutor's attempt to illustrate to the jury that a sexual intrusion consists of any contact, however slight.

[¶ 17] In support of our finding, we consider defense counsel's response to the prosecutor's remark during the defense's closing argument:

> Basically, was there oral sex or was there not. That's where the primary issue lies.
>
> . . . .
>
> One of the contradictions I heard … what was their explanation as to why there is a different story with Dr. Ching? The State said it's because there were two incidents. It's okay that they—the information doesn't match up because there were two incidents.
>
> So when they're explaining how they're different they need to use the explanation they're different incidents. But when they need to say there was intrusion, they need to adopt the incident that they say is another one because they're saying that the incident with Dr. Ching involved digital penetration. There is no charge of digital penetration here.

[¶ 18] These remarks by defense counsel ably demonstrate to the jury that they are to make their decision as to the facts of the case based only on the charge of oral sex, not the digital penetration. Indeed, throughout the trial, the evidence presented made it clear that Lewis was charged with sexual assault for the incident of oral sex with CF. Given the clear message presented to the jury regarding the nature of the case, the prosecutor's remarks were not so prejudicial that without them Lewis might have enjoyed a more favorable verdict.

## CONCLUSION

[¶ 19] We find that there was sufficient evidence to support a verdict of first-degree sexual assault, and that the prosecutor's statements during closing argument did not rise to the level of prosecutorial misconduct. Therefore, the judgment of the district court is affirmed.