2010 WY 81

**Manuel MASIAS, Appellant (Defendant),**

v.

**The State of Wyoming, Appellee (Plaintiff).**

**No. S–09–0131.**

Supreme Court of Wyoming.

June 23, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Manuel Masias, was charged with one count of first degree sexual assault and three counts of battery. The jury found Appellant guilty of first degree sexual assault and one count of battery.[1] He challenges only the conviction of first degree sexual assault, asserting that the State did not present sufficient evidence to prove all of the elements of the crime. He also claims

the district court erred in its response to a jury question. We affirm.

## ISSUES

[¶ 2] Appellant presents the following issues:

1. Was there insufficient evidence of the elements of "submission" and the "actual application of physical force and/or forcible confinement" to support the jury's conviction for first degree sexual assault?

2. Did the district court commit plain error in its response to the jury's note?

## FACTS

[¶ 3] Appellant and the victim, K.C., began a dating relationship in July of 2006. The relationship progressed and by October of 2007 they were living together. According to K.C., it was during this time frame that Appellant became abusive. K.C. testified that Appellant was jealous, possessive, and controlling. He listened in on phone conversations and limited the amount of time K.C. spent with her family. K.C. testified to several incidents of physical abuse that occurred in late October.

[¶ 4] The incident that led to the sexual assault charge occurred on October 29, 2007. That evening, K.C. testified, she and Appellant had been drinking and arguing. K.C. went to bed. Appellant came into the bedroom and started "harassing" her over "wanting to have sex." When she refused, Appellant accused her of having an affair. He then got into the bed, forced her legs apart, and shoved his fist in her vagina. K.C. tried to resist, but Appellant's "force" held her down, and she was unable to get away. K.C. got out of bed after the assault and discovered she was bleeding. K.C. cleaned herself up and returned to bed, but remained fearful that Appellant would assault her again.

[¶ 5] The next day, Appellant stayed home. He was apologetic for his behavior, but K.C. testified that she feared that he

---

1. During trial, the State voluntarily withdrew one of the battery charges and Appellant was found not guilty on the remaining charge.

would hurt her again. On October 31st, after Appellant went to work, K.C. reported the incident to a neighbor. The neighbor contacted law enforcement and K.C. was transported to the hospital. A sexual assault nurse (SANE nurse) noted bruises on K.C.'s chest and arms. She observed that K.C. had two serious lacerations to her vaginal area. According to the nurse, the injuries were caused by blunt force trauma.

[¶ 6] Appellant was subsequently arrested and charged with one count of first degree sexual assault, in violation of Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2007) and three counts of battery, in violation of Wyo. Stat. Ann. § 6–2–501(b).[2] Appellant testified that the sexual contact was consensual. According to Appellant, when the two went to bed the night of October 29th, K.C. told him that she "want[ed] to make love" and asked if he "could give her some foreplay." Appellant said they engaged in foreplay which included Appellant inserting his finger into K.C.'s vagina. At that point, Appellant claims that K.C., who had a history of seizures, started having convulsions. Appellant testified that he removed his hand when he realized K.C. was seizing and held her down for three to four minutes until the seizure stopped.

[¶ 7] The jury found Appellant guilty of first degree sexual assault and one count of battery. Appellant was sentenced to a term of incarceration of six to ten years for the sexual assault, and a concurrent term of six months for the battery. He filed a timely appeal of the first degree sexual assault conviction.

### DISCUSSION

#### Sufficiency of the Evidence

[¶ 8] When an appellant presents a claim of insufficient evidence we apply the following standard of review:

2. Wyo. Stat. Ann. § 6–2–302(a)(i) provides:
   (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
   (i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement.

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Lewis v. State*, 2006 WY 81, ¶ 7, 137 P.3d 909, 911 (Wyo.2006) (internal citations and quotations marks omitted).

[¶ 9] Appellant asserts that the State did not present sufficient evidence of each element of first degree sexual assault. Specifically, he contends a jury could not find that he caused "submission" of K.C., or that he caused submission by both "physical force" and "forcible confinement." To facilitate the discussion, we repeat the elements of first degree sexual assault:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement.

Wyo. Stat. Ann. § 6–2–302(a)(i). At the conclusion of the trial, the jury received the following instruction with respect to the first degree sexual assault charge:

The elements of the crime of Sexual Assault in the First Degree, as charged in this case under Count I are:

Wyo. Stat. Ann. § 6–2–501(b) provides:
(b) A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another.

1. On or about the 29th day of October, 2007;

2. In Laramie County, Wyoming;

3. The Defendant, MANUEL MASIAS;

4. Inflicted sexual intrusion on [K.C.]; and

5. The Defendant caused submission of [K.C.];

6. Through the actual application of physical force and/or forcible confinement;

7. Which the Defendant reasonably calculated would cause submission of [K.C.].

If you find from your consideration of all the evidence that each of these elements has been proven beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the Defendant not guilty.

[¶ 10]   Part 6 of the instruction was presented to the jury with the alternatives "physical force and/or forcible confinement." Because the instruction provides alternative bases for conviction and a general verdict form was used, we must determine if there was sufficient evidence to support a finding that Appellant caused submission of K.C. through application of physical force *and* through application of forcible confinement. *Lewis,* ¶ 10, 137 P.3d at 912. "The verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Bush v. State,* 908 P.2d 963, 966 (Wyo.1995) (internal quotation marks omitted); *Tanner v. State,* 2002 WY 170, ¶ 8, 57 P.3d 1242, 1244 (Wyo.2002). The State maintains there was sufficient evidence of both "physical force" and "forcible confinement" to support the guilty verdict.

[¶ 11]   Viewing the facts in the light most favorable to the State, the evidence reflected that, after a night of drinking and fighting, Appellant asked K.C. for sex and she refused.   Appellant then got into bed, forced K.C.'s legs apart, and jammed his fist into K.C.'s vagina.   K.C. tried to fight off Appellant but he held her down with "his force," and she was unable to escape.   She did not report the incident the next day because Appellant stayed home and she was fearful of his reaction.   On the following day, after Appellant left for work, K.C. reported the incident to a neighbor and law enforcement was contacted.   K.C. was taken to the hospital for a medical exam, where the SANE nurse documented two serious injuries to her vaginal area.

[¶ 12]   K.C. testified about the incident as follows:

[Prosecutor]:  Okay. So as you were lying there then tell me exactly in detail what happened.

[K.C.]:  Um, I was laying on my back in the bed.   And he was angry with me because I wouldn't have sex with him.   I wasn't in the mood.   So then he started accusing me of having an affair and that I was seeing somebody else, all of this which was not true.   And he stuck his hand up me, inside of me, hurt me; I mean, he hurt me.

[Q]:  Did he hold you down in any way?

[A]:  Well, he's bigger than I am.   I didn't really have much of a choice.   He didn't hold me down, no.   He just—his force held me down.

. . .

[Q]:  And when this happened did you resist him in any way or try to fight [Appellant]?

[A]:  Yes.

[Q]:  And were you able—you weren't able to fight him off?

[A]:  No.

. . .

[Q]:  And so your legs were together as you were lying on the bed with [Appellant].   So he had to force your legs apart to get his hands into your private area?

[A]:  Yes.

[Q]:  You didn't voluntarily open your legs, did you?

[A]:  No.

. . .

[Q]:  And after [Appellant] forced your legs apart and he put his hand in your private

area, how did you feel immediately? What did you feel?

[A]: It hurt.

[Q]: Had you ever had that kind of hurt before?

[A]: No.

[Q]: Would you have ever consented to [Appellant] doing that?

[A]: No.

[¶ 13] The SANE nurse testified that K.C.'s vaginal injuries were caused by blunt force trauma. She also stated that of the approximately 200 exams she had performed during her career, K.C.'s injuries were the most serious she had seen. There is sufficient evidence that Appellant caused the "submission" of K.C. by "physical force."

[¶ 14] We must also determine if the evidence supports a finding that Appellant "forcibly confined" K.C. Appellant contends that K.C. "was not 'forcibly confined' as that term should be reasonably understood." He cites to the definitions of "forcible" and "confinement" in Black's Law Dictionary for the meaning of the terms. According to that source, "forcible" means "[e]ffected by force or threat of force against opposition or resistance."[3] Black's Law Dictionary 674 (8th ed. 2004). "Confinement" is defined as "[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained." *Id.* at 318. Appellant maintains "[t]here was

no testimony to show that [he] held her down, kept her in place, did not permit her to leave the bed, or in any other way 'forcibly confined' her." We disagree.

[¶ 15] K.C. testified that Appellant held her down with "his force," and she tried to get away but could not. The difference in physical size between the two supports K.C.'s testimony. Appellant is taller and heavier than K.C., who stands five foot four and weighs a little more than one hundred pounds.[4] K.C. also described the sexual assault to the SANE nurse stating, "I was laying in bed. He wanted sex. I told him no. He got mad and jammed his fist into my vagina, his whole fist inside. He's not a small man."

[¶ 16] Appellant's testimony also supports a finding that he restrained K.C. that night. He admitted that he "put [his] arm over her chest and one on her leg to hold her down" for three to four minutes. Although Appellant testified that his purpose in holding her down was to prevent her from hurting herself while she was having a seizure, the jury could reasonably determine that his explanation for holding K.C. down was not credible. Under the dictionary definition of "forcible confinement" supplied by Appellant, there is sufficient evidence that K.C. was "restrained by force" during the attack.[5]

---

**3.** "Force" is defined as "[p]ower, violence, or pressure directed against a person or thing." Black's Law Dictionary 673 (8th ed. 2004).

**4.** According to Appellant's pre-sentence investigation, he is five foot eight and weighs one hundred eighty-three pounds. Both Appellant and K.C. testified at trial, allowing the jury to determine the size difference between K.C. and Appellant.

**5.** Appellant does not challenge the elements of the jury instruction. He did not request a definition of any of the terms in the instruction.

The State notes that in the "kidnapping" context, evidence of additional confinement, other than that incidental to the commission of other felonies, is necessary because of the greater penalties provided by the kidnapping statutes:

In order to confine another person in violation of Iowa Code section 710.1 [the kidnapping statute], the confinement must exceed what is inherently incident in the underlying felony. This is called the incidental rule. No minimum period of confinement is required to

convict a defendant of kidnapping. The confinement must however be significantly independent of the confinement incident to the commission of the underlying crime. Confinement reaches the level required for section 710.1 if it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the commission of the underlying offense. If the defendant merely seizes the victim during the commission of the crime, this does not rise to the level of confinement required for kidnapping.

The policy behind the incidental rule is that confinement against the victim's will is often an attendant circumstance in the commission of many of the underlying crimes in section 710.1. We have said the legislature did not intend to afford prosecutors the option of bootstrapping convictions for kidnapping, carrying life sentences, onto charges for crimes for which the legislature provides much less severe penalties.

*State v. Griffin,* 564 N.W.2d 370, 373 (Iowa 1997) (internal citations and punctuation omitted).

[¶ 17] Additionally, we have previously recognized that in determining whether "forcible confinement" was established, a jury may appropriately consider the dynamics of the relationship of the assailant and the victim. In *Lewis*, ¶ 12, 137 P.3d at 912, where the victim was a four-year-old girl and the assailant was her step-father, we found sufficient evidence of "forcible confinement" by considering the discrepancy in size and strength, and the dynamics of the parent-child relationship.

[¶ 18] The evidence regarding the dynamics of the relationship between Appellant and K.C. reflected prior physical abuse. K.C. once resisted Appellant by slapping him, but testified that she immediately regretted it because she was afraid of his retaliation. She also testified that she did not immediately call the police because Appellant was still in the house and she feared his reaction if he found out that she had reported the incident. The jury could reasonably use these facts in determining whether Appellant's actions were likely to restrain K.C. and cause her submission. There is sufficient evidence to support the jury's verdict.

### Jury Question

[¶ 19] Appellant also asserts that the district court erred in its response to a jury question. During deliberations, the jury sent a note which read:

Are we allowed to have a dictionary to look up the definition of "submission" for # 5 of count 1?

The court conferred with counsel for both sides and all agreed that the jury should not be provided a dictionary. The district court returned the note to the jury with the answer: "No. You must rely on the instructions you have."

[¶ 20] When no objection to the district court's response to a jury question is made, we will review for plain error. *Snow v. State*, 2009 WY 117, ¶ 26, 216 P.3d 505, 513 (Wyo.2009). To establish plain error, the appellant must show 1) the record clearly reflects the incident urged as error; 2) a

violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced by the denial of a substantial right. *Causey v. State*, 2009 WY 111, ¶ 18, 215 P.3d 287, 293 (Wyo.2009). Under the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue. *Id.*, ¶ 19, 215 P.3d at 293.

[¶ 21] When reviewing jury instructions, we also apply the following principles. The trial court has the duty to instruct the jury on the general principles applicable in the case and is given wide latitude to do so. *Crabtree v. State*, 2005 WY 62, ¶ 9, 112 P.3d 618, 620 (Wyo.2005). "The trial court's ruling on an instruction must be prejudicial to constitute reversible error. Since the function of jury instructions is to give guidance regarding the applicable law, prejudice results when the instructions confused or misled the jury with respect to the proper principles of law." *McGuire v. Solis*, 2005 WY 129, ¶ 23, 120 P.3d 1020, 1026 (Wyo. 2005).

[¶ 22] The jury's question and the district court's response appear in the record satisfying the first prong of plain error review. However, Appellant fails to establish a violation of a clear and unequivocal rule of law. To the contrary, our case law indicates that providing the jury with a dictionary is not appropriate. In *Rocky Mountain Trucking Co. v. Taylor*, 79 Wyo. 461, 335 P.2d 448, 457 (1959), a bailiff provided a dictionary to the jury. We called it "highly improper," but found the error was harmless because the verdict was supported by sufficient evidence. In *Zanetti Bus Lines, Inc. v. Logan*, 400 P.2d 482 (Wyo.1965), a bailiff again supplied the jury with a dictionary. We held that giving the jury a dictionary was improper, but reviewed the definitions the jury likely considered, and determined that the error did not affect the outcome of the trial. *Id.* at 488. The district court did not err when it did not allow the jury to have a dictionary.

In this case, Appellant was not charged with kidnapping and is not subject to any additional statutory penalty if convicted of first degree sexu-

al assault on the basis of "physical force" or "forcible confinement" or both.

[¶ 23] Appellant urges us to interpret the jury's note, not as a simple request for a dictionary, but as a request for a definition of the word "submission." Appellant asserts that "[t]here is a reasonable probability, given the acquittal on one count, the length of time the jury deliberated, and the credibility issues with the victim, as well as the paucity of evidence of 'submission,' that the jury would have reached a different verdict than it did" had it received a definition of "submission."

[¶ 24] Appellant did not offer an instruction defining "submission" in response to the jury's request for a dictionary, or in his proposed jury instructions. He claims plain error occurred when the court did not provide a definition, but provides no support for this assertion. We can identify no violation of a clear and unequivocal rule of law.

[¶ 25] "Submission" is not defined in the statute, suggesting the legislature did not mean for it to have a specialized meaning. *See Ewing v. State*, 2007 WY 78, ¶ 10, 157 P.3d 943, 946 (Wyo.2007). A district court is not required to define a statutory term unless the term has a technical or legal meaning different than its common meaning. *Id.*, ¶ 9, 157 P.3d at 946. Appellant offers no legal or technical definition of the word "submission" that is different from its common meaning. Appellant has not established the likelihood of a more favorable verdict had the word "submission" been defined. There was no plain error.

[¶ 26] Affirmed.