2011 WY 10

**Justin Daniel BREAZEALE,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S-10-0097.**

Supreme Court of Wyoming.

Jan. 24, 2011.

836

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General. Argument by Ms. Craig.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Justin Daniel Breazeale appeals his conviction on one count of aggravated homicide by vehicle, raising six separate claims of error. We will affirm his conviction.

### ISSUES

[¶ 2] Mr. Breazeale presents these issues:

1. Did the trial court err in denying the suppression of medical records obtained from Mr. Breazeale after assertion of his right to silence and counsel?

2. Did the evidence support a conviction of reckless driving?

3. Did the evidence support a conviction of driving under the influence of cocaine?

4. Did the presentation of evidence of cocaine use two days prior to the incident violate W.R.E. 404(b)?

5. Did the district court have jurisdiction to try Mr. Breazeale on a charge different from the one on which he was bound over by the circuit court?

6. Did the trial court deny Mr. Breazeale his constitutional right to present his defense of a medical cause of his unconsciousness?

### FACTS

[¶ 3] On March 15, 2009, Mr. Breazeale and his girlfriend were running errands in Casper, Wyoming, in a pickup borrowed from a friend. While driving, Mr. Breazeale lost consciousness or "blacked out." During the black out, his pickup veered to the left, crossed three lanes of traffic, and collided head-on with a small station wagon. The driver of the station wagon died from injuries suffered in the wreck. According to Mr. Breazeale, he did not realize he had wrecked the pickup until he regained consciousness after the collision.

[¶ 4] At the scene of the collision, Mr. Breazeale's girlfriend told the police she did not know how the wreck occurred. She was looking at something in her lap, she said, and the next thing she knew, the pickup was crashing into the other vehicle. At trial, however, she testified that Mr. Breazeale had lost consciousness after inhaling "canned air" they had purchased at an office supply store. At trial, a toxicology expert testified that the active ingredients in "canned air," when inhaled, cause a "very rapid intoxication phase, a euphoric phase ... [a] very fast high." The toxicologist also stated that inhaling "canned air" can cause loss of consciousness and loss of muscle control.

[¶ 5] Mr. Breazeale was taken to the hospital after the wreck. There, he agreed to testing of his blood and urine. The tests did not reveal any traces of the "canned air," but as the toxicologist explained, the active ingredients in "canned air" are so volatile that they become undetectable "within an hour." The analyses did reveal the presence of cocaine metabolites.[1] In addition, the police analyzed the used can of "canned air" found in the pickup after the wreck, and found DNA consistent with Mr. Breazeale's on the tube through which the "canned air" was sprayed. After these test results were returned, the police arrested Mr. Breazeale and charged him with aggravated vehicular homicide.

[¶ 6] At trial, Mr. Breazeale denied inhaling "canned air" before the wreck. He asserted that his black out was due to a seizure disorder, which was not diagnosed until after the wreck. A neurologist who testified at trial confirmed a diagnosis of epileptic seizures. According to the neurologist, Mr. Breazeale could have experienced a seizure just prior to the wreck, though he could not say whether Mr. Breazeale actually had suffered a seizure at that time.

[¶ 7] The jury found Mr. Breazeale guilty of aggravated vehicular homicide, in violation of Wyo. Stat. Ann. § 6–2–106(b)(i) and (ii) (LexisNexis 2009):

A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:

(i) While operating or driving a vehicle in violation of [specified statutes prohib-

---

1. As explained by a forensic toxicologist at trial, cocaine is metabolized rapidly in the body, and breaks down into distinctive molecules known as metabolites.

iting such while under the influence of intoxicating liquor or controlled substances], he causes the death of another person and the violation is the proximate cause of the death; or

(ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

In its verdict form, the jury specifically found that Mr. Breazeale was guilty under both of these subsections. The district court sentenced Mr. Breazeale to eighteen to twenty years in prison. Mr. Breazeale appealed his conviction to this Court.

## DISCUSSION

*Did the trial court err in denying the suppression of medical records obtained from Mr. Breazeale after assertion of his right to silence and counsel?*

[¶ 8] In the hospital after the wreck, a police officer asked to talk with Mr. Breazeale. Mr. Breazeale contends that he told the officer he did not want to talk without an attorney present. The officer nevertheless remained in the room with Mr. Breazeale, and later asked him to sign a form consenting to the release of his medical records. Mr. Breazeale agreed. In a pretrial motion, however, Mr. Breazeale claimed that it was improper for the police officer to continue talking with him after he invoked his right to counsel, and that his consent to release the medical records was coerced rather than voluntary. On that basis, he moved to suppress the evidence of his medical records, including the results of the blood and urine tests. The district court denied the motion, and Mr. Breazeale appeals that decision.

When we review a district court's decision to deny motions to suppress, we defer to the district court's findings of fact unless they are clearly erroneous. The evidence is viewed in a light favorable to the district court's determination, because that court had the opportunity to hear the evidence and assess the credibility of the witnesses. The issue of law—whether a search was unreasonable and in violation of constitutional rights—is reviewed de novo.

*Lovato v. State*, 2010 WY 38, ¶ 11, 228 P.3d 55, 57 (Wyo.2010) (internal quotation marks and citations omitted).

[¶ 9] The district court found, and Mr. Breazeale admits, that he was not in police custody while he was in the hospital. The district court ruled that, because he was not in custody, Mr. Breazeale's right to counsel and his right to remain silent did not yet apply. This ruling is consistent with our precedent. *Hannon v. State*, 2004 WY 8, ¶ 41, 84 P.3d 320, 337 (Wyo.2004) ("[T]his Court adheres to the principle that the rights recognized in *Miranda*, including the right to counsel, apply only in the context of custodial interrogation.").

[¶ 10] On appeal, Mr. Breazeale concedes that he was not in custody, and that the police were not required to inform him of his right to counsel. He maintains, however, that he still had the right to counsel, and that the police officer was required to stop questioning him once he invoked his right to counsel. "Once the officer refused to honor Mr. Breazeale's request to terminate the contact," he argues in his brief, "his consent became coerced."

[¶ 11] Mr. Breazeale's argument is directly contrary to our ruling in *Hannon*. In that case, Mr. Hannon was interviewed by a police officer, but was not in custody. At one point during the interview, Mr. Hannon said, "Well, if I'm going to be charged I need to go see my lawyer." *Hannon*, ¶ 33, 84 P.3d at 335. On appeal, Mr. Hannon contended that "the interview should have ceased" after he invoked his right to counsel. *Id.*, ¶ 39, 84 P.3d at 337. We considered federal precedent including *Minnesota v. Murphy*, 465 U.S. 420, 424 n. 3, 104 S.Ct. 1136, 1140 n. 3, 79 L.Ed.2d 409 (1984) (A person has no right to have an attorney present during a noncustodial interview.), and cases from other states including *People v. Villalobos*, 193 Ill.2d 229, 239, 250 Ill.Dec. 17, 737 N.E.2d 639, 645 (2000) ("It is the right to an attorney *during custodial interrogation* that *Miranda* and its progeny protects. That right does not exist outside the context of custodial interrogation. One cannot invoke a right that does not yet exist."). We concluded

that, because Mr. Hannon was not in custody, he "had no right to have counsel present during the interview," and the police officer was not required to terminate the interview when Mr. Hannon asked for counsel. *Hannon*, ¶ 49, 84 P.3d at 339. Similarly, in Mr. Breazeale's case, he was not in custody when he attempted to invoke his right to counsel, and it was not improper for the police to continue the interview.

■ [¶ 12] In *Hannon*, we recognized that "the question of whether a confession is voluntary may arise whether or not the defendant was in custody when it was given." *Id.*, ¶ 50, 84 P.3d at 339. "When such a claim is raised, it is the duty of an appellate court . . . 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.'" *Id.*, quoting *Beckwith v. United States*, 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976). To determine voluntariness, we consider "the totality of the surrounding circumstances," including "the atmosphere and events surrounding the interrogation, such as the use of violence, threats, promises, improper influence or official misconduct." *Hannon*, ¶ 51, 84 P.3d at 340. In Mr. Breazeale's case, the record is devoid of any suggestion that the police officer was coercive or threatening at any time during the interview. There is no basis to conclude that Mr. Breazeale's consent to release his medical records was coerced. We therefore affirm the district court's denial of Mr. Breazeale's motion to suppress the evidence contained in his medical records.

### Did the evidence support a conviction for driving in a reckless manner?

■ [¶ 13] As his second issue, Mr. Breazeale contends that there was insufficient evidence to prove that he was driving in a reckless manner.

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury [and] our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Masias v. State*, 2010 WY 81, ¶ 8, 233 P.3d 944, 947 (Wyo.2010), quoting *Lewis v. State*, 2006 WY 81, ¶ 7, 137 P.3d 909, 911 (Wyo. 2006).

■ [¶ 14] Mr. Breazeale was convicted of aggravated homicide by vehicle, in violation of Wyo. Stat. Ann. § 6–2–106(b)(ii), which provides that "A person is guilty of aggravated homicide by vehicle . . . if: . . . (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person." On appeal, he contends that the evidence was insufficient to prove that he drove in a reckless manner, pointing to the lack of any evidence that he "exceeded the speed limit or disregarded traffic control devices." He acknowledges that there was evidence he had inhaled a controlled substance which could have impaired his ability to drive, and admits that driving while under the influence of a controlled substance is prohibited by Wyo. Stat. Ann. § 31–5–233. He claims, however, that driving while under the influence of a controlled substance does not necessarily constitute reckless driving, which is prohibited by a separate statute, Wyo. Stat. Ann. § 31–5–229 ("Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."). Absent evidence of willful or wanton disregard, Mr. Breazeale contends, he could not be found guilty of driving in a reckless manner.

[¶ 15] As set forth above, Mr. Breazeale's argument relies on the definition of reckless driving found in Wyo. Stat. Ann. § 31–5–229. However, as we stated in *Rogers v. State*, 971 P.2d 599, 603 (Wyo.1999), the definition of recklessly for purposes of aggravated vehicular homicide is the one set forth in Wyo. Stat. Ann. § 6–1–104(a)(ix):

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

This definition was correctly included in the instructions given to the jury in Mr. Breazeale's case. Contrary to his argument, under this definition it is not necessary to prove "willful or wanton disregard for the safety of persons or property" in order to prove reckless driving.

[¶ 16] The record contains ample evidence that Mr. Breazeale consciously disregarded a substantial and unjustifiable risk when he drove while inhaling the "canned air." His girlfriend testified that he first inhaled the "canned air" while parked in the lot of the store where the "canned air" was purchased. At that time, "his head cocked over to the side, and he was unconscious" for one to two minutes. Even after regaining consciousness, he remained dizzy and "out of it." She offered to drive, but Mr. Breazeale refused. While driving on the street, he inhaled the "canned air" again, and lost consciousness again. Regardless of the obvious risk, Mr. Breazeale inhaled the "canned air" a third time. This time, he lost consciousness again, and collided with the victim's vehicle. Given this evidence, a rational jury could reasonably conclude Mr. Breazeale was driving the vehicle in a reckless manner.

***Did the evidence support a conviction for driving under the influence of cocaine?***

[¶ 17] Mr. Breazeale's third issue is also one of the sufficiency of the evidence, and we apply the same standard of review. Mr. Breazeale was also convicted of aggravated homicide by vehicle under Wyo. Stat. Ann. § 6–2–106(b)(i), which provides that "A person is guilty of aggravated homicide by vehicle . . . if: (i) While operating or driving a vehicle in violation of [Wyo. Stat. Ann. §§ ] 10–6–103, 31–5–233 or 41–13–206, he causes the death of another person and the violation is the proximate cause of the death[.]" In

Mr. Breazeale's case, he was accused of driving in violation of Wyo. Stat. Ann. § 31–5–233(b)(ii)(B), which prohibits a person from driving or having actual physical control of a vehicle while "under the influence of a controlled substance" to a degree that "renders him incapable of safely driving."

[¶ 18] At trial, the prosecution presented evidence that the blood and urine samples taken from Mr. Breazeale after the wreck tested positive for the presence of cocaine metabolites. An expert witness explained that the metabolites indicated Mr. Breazeale had used cocaine in the recent past. This was consistent with the testimony of a friend of Mr. Breazeale, who said that the two had used cocaine two days before the wreck. The expert witness further indicated that although the cocaine metabolites were present, that did not mean there was any cocaine present in Mr. Breazeale's system. Because there was no cocaine in his system, only cocaine metabolites, Mr. Breazeale argues that he could not have been under the influence of cocaine at the time of the wreck. The evidence was therefore insufficient, he claims, to prove that he was driving while under the influence of a controlled substance.

[¶ 19] Mr. Breazeale's argument misses the mark. As discussed further in the next section, the prosecution alleged that Mr. Breazeale's prior use of cocaine could have affected his physical condition. But the prosecution's basic theory, as reflected in the jury instructions, was that Mr. Breazeale was under the influence of "glue, aerosol or other toxic vapor which, when intentionally inhaled or sniffed, results in impairment of an individual's ability to drive safely." This language is taken from the definition of a controlled substance found in Wyo. Stat. Ann. § 31–5–233(a)(ii)(B). The record contains ample evidence from which a rational jury could find that Mr. Breazeale was under the influence of a controlled substance after he inhaled the "canned air."

***Did the presentation of evidence of cocaine use two days prior to the incident violate W.R.E. 404(b)?***

[¶ 20] In his fourth issue, Mr. Breazeale argues that evidence of his prior

use of cocaine was evidence of "other crimes, wrongs or acts," and that the district court should have excluded this evidence pursuant to W.R.E. 404(b). "A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion." *Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007).

[¶ 21] Prior to trial, Mr. Breazeale filed a request for notice of the prosecution's intent to introduce evidence of prior bad acts. The prosecution disclosed that it was prepared to offer evidence that: (1) at the hospital immediately after the wreck, Mr. Breazeale had tested positive for cocaine metabolites; (2) a friend had used drugs along with Mr. Breazeale on several prior occasions, and the two had used cocaine two days before the wreck; (3) on March 19, 2009, a plastic wrapper with cocaine residue was found in a search of Mr. Breazeale's vehicle; (4) about two months after the wreck, while released on bond for a separate criminal charge, Mr. Breazeale tested positive for cocaine metabolites; and (5) about two years before the wreck, Mr. Breazeale had been stopped for speeding, and tested positive for marijuana, oxycodone, cocaine, and cocaine metabolites.

[¶ 22] The district court held a pretrial hearing to consider the admissibility of this evidence. It ruled that most of the evidence offered by the prosecution would be excluded under W.R.E. 404(b) because it served only "to show bad character." The district court ruled, however, that the prosecution would be allowed to present evidence of the cocaine metabolites in Mr. Breazeale's blood and urine samples, and that the friend could testify that he and Mr. Breazeale had used cocaine two days before the wreck. The prosecution argued that this evidence was offered to show that Mr. Breazeale was "under the influence of drugs ... under the influence of the cocaine metabolites in his blood." The district court observed that "if the evidence goes directly to an element of the crime, it is not 404(b)." Evidence that Mr. Breazeale used cocaine two days before the wreck was admissible because it was "proffered to show that in fact he was under

the influence," and so was "directly related to the crime." That was a reasonable conclusion, and no abuse of discretion.

[¶ 23] Mr. Breazeale contends, however, that at trial "the prosecution did not present evidence tying the prior [cocaine] use to the causation of the accident." In other words, Mr. Breazeale claims that the prosecution, despite its argument at the pretrial hearing, failed to show that he was under the influence of cocaine at the time of the wreck. His use of cocaine two days before the wreck was not directly related to the crime, he argues, and so the evidence should have been excluded pursuant to W.R.E. 404(b).

[¶ 24] In making a pretrial determination regarding the admissibility of evidence under W.R.E. 404(b), the district court must rely on the prosecution's representations about what the evidence will be. When the actual evidence is presented at trial, however, it may not be exactly as represented in the pretrial hearing. This does not necessarily mean that the prosecution intentionally misrepresented the evidence. Variations could occur, for example, because new evidence is discovered, a witness provides unexpected testimony, or counsel did not fully understand the evidence at the time. When the evidence at trial is not the same as represented by the prosecution during the pretrial hearing, defense counsel has an opportunity to make an appropriate objection. In other words, the district court's pretrial ruling on the admissibility of evidence under W.R.E. 404(b) does not preclude an objection at trial that the evidence is not as represented earlier, and is not admissible under W.R.E. 404(b). Mr. Breazeale made no such objection during his trial.

[¶ 25] Our review of the record, however, reveals no meaningful discrepancy between the evidence as represented during the pretrial hearing and as actually introduced at trial. At the hearing, the prosecution represented that the evidence would show that Mr. Breazeale was "under the influence of drugs ... under the influence of the cocaine metabolites in his blood." At trial, the prosecution's expert witness admitted that the presence of cocaine metabolites did not mean Mr. Breazeale was under the influence of cocaine

at the time. However, she indicated that the use of cocaine two days earlier could still have a direct effect on his physical condition on the day of the wreck. She described three phases of response to the ingestion of cocaine. First is the "rush" phase, in which the person feels euphoric and exhibits rapid movements and speaking. Next is the "run" phase, during which the euphoria and rapid movements diminish. Finally there is the "crash" phase, during which the person becomes very sleepy and tired. The expert testified that a person experiencing the "crash" phase could have impaired driving abilities due to sleepiness and lowered cognitive functions. Moreover, the active ingredient in "canned air" acts as an analgesic, and a person in the "crash" phase "could pass out" after inhaling "canned air." The expert further testified that if Mr. Breazeale had used cocaine two days before the wreck, he could have been experiencing the "crash" phase just prior to the wreck. W.R.E. 404(b) prohibits evidence of "other crimes, wrongs, or acts" offered "to prove the character of a person in order to show that he acted in conformity therewith." It does not prohibit evidence of a defendant's physical condition at the time of the alleged crime. The district court did not abuse its discretion by admitting this evidence at trial.

***Did the district court have jurisdiction to try Mr. Breazeale on a charge different from the one on which he was bound over by the circuit court?***

[¶ 26] After a preliminary hearing, the circuit court bound Mr. Breazeale over to the district court on charges of aggravated homicide by vehicle in violation of Wyo. Stat. Ann. § 6–2–106(b)(i) and (ii). Approximately five months later, and only a few days before trial, the circuit court filed an "Amended Transcript," apparently to correct the date of Mr. Breazeale's initial appearance. The amended document stated that Mr. Breazeale had been bound over for trial on a charge of violating Wyo. Stat. Ann. § 6–2–101(b)(i) and (ii), a statute relating to murder in the first degree. Mr. Breazeale contends that, because the circuit court bound him over on a charge of murder, the district court lacked jurisdiction to try him on a

charge of aggravated homicide by vehicle. The jurisdiction of the trial court is a question of law subject to *de novo* review. *De-Loge v. State*, 2010 WY 60, ¶ 15, 231 P.3d 862, 865 (Wyo.2010).

[¶ 27] For purposes of this case, we can agree with Mr. Breazeale's basic contention that a defendant should not be bound over to the district court on one charge, but tried on a different charge. *See Jackson v. State*, 891 P.2d 70, 74 (Wyo.1995). However, a review of the record establishes that the recitation in the "Amended Transcript" that Mr. Breazeale was charged under Wyo. Stat. Ann. § 6–2–101(b)(i) and (ii) (first degree murder) was a clerical or typographical error. The murder statute, Wyo. Stat. Ann. § 6–2–101(b), does not include subsections (i) or (ii). The aggravated vehicular homicide statute, Wyo. Stat. Ann. § 6–2–106(b), does contain subsections (b)(i) and (b)(ii).

[¶ 28] The record indicates that this typographical error never caused any confusion about the actual charges against Mr. Breazeale. The Information and supporting affidavit indicated that he was charged with aggravated vehicular homicide, as did the criminal warrant. The circuit court informed Mr. Breazeale he was charged with aggravated homicide by vehicle. He was arraigned in the district court on a charge of aggravated vehicular homicide. The jury verdict specified the charge against him as aggravated vehicular homicide. Transcripts of the trial, motions hearing, and other proceedings leave no doubt that everyone involved knew that the charge against Mr. Breazeale was aggravated homicide by vehicle.

[¶ 29] Mr. Breazeale correctly asserts that he has a constitutional right to be informed of the nature of the charge against him. *See Estrada–Sanchez v. State*, 2003 WY 45, ¶ 11, 66 P.3d 703, 708 (Wyo.2003). In the circumstances of this case, we are satisfied that he was fully informed. The typographical error listing the wrong statute number was utterly harmless and did not deprive the district court of jurisdiction to try Mr. Breazeale on the correct charge of aggravated homicide by vehicle.

***Did the trial court deny Mr. Breazeale his constitutional right to present his defense of a medical cause of his unconsciousness?***

[¶ 30] As his sixth issue, Mr. Breazeale claims that the district court erred when it precluded three defense witnesses from testifying at trial. The witnesses, two doctors and a nurse practitioner, were offered by the defense to testify that Mr. Breazeale suffered from a seizure disorder. The district court ruled that the witnesses would not be allowed to testify because the defense had not complied with the disclosure and discovery requirements of W.R.Cr.P. 12.3(a).

> [T]he applicable standard of review is whether the district court abused its discretion in deciding that the appropriate sanction for a discovery violation was to exclude [the] testimony of a defense witness. In determining whether there has been an abuse of discretion, "the ultimate issue is whether or not the court could reasonably conclude as it did."

*Lawson v. State*, 994 P.2d 943, 946–47 (Wyo. 2000), quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

[¶ 31] W.R.Cr.P. 12.3(a) provides as follows:

> Upon written demand of the attorney for the state, stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within 10 days, or at such different time as the court may direct, upon the attorney for the state, a written notice of the defendant's intention to offer a defense of unconsciousness, automatism, or traumatic automatism. Such notice by the defendant shall state with particularity the facts upon which the defendant relies to justify the defense of unconsciousness, automatism, or traumatic automatism and the name and addresses of the witnesses upon whom the defendant intends to rely to establish such defense.

On July 29, 2009, the prosecution filed a demand pursuant to this rule. The defense did not respond within the ten-day period specified by the rule. It did not respond by October 20, 2009, the date set by the district court for both sides to provide discovery information. It did not respond by November 2, 2009, the deadline set by the district court for filing all pretrial motions. In a hearing held on November 20, 2009, the prosecution pointed out that the defense had failed to respond. The district court extended the time, allowing the defense until November 24, 2009, to file its notice if it intended to offer a defense of unconsciousness.

[¶ 32] On November 24, 2009, approximately two weeks before the trial was scheduled to begin, the defense filed its notice. It set forth Mr. Breazeale's contention "that on March 15, 2009, he suffered from the effects of a seizure [that] rendered him temporarily unconscious causing him to lose control of the vehicle he was operating." It stated that "Information to support this allegation has been forwarded to the State on this day and consists of medical records from Casper Wyoming Neurology." The notice listed three witnesses, two doctors and a nurse practitioner, to "provide information relating to the Defendant's seizure diagnosis and treatment." The prosecution filed an objection, claiming that the notice was inadequate to satisfy the requirements of W.R.Cr.P. 12.3(a). The district court agreed, and ruled that the three defense witnesses could not testify at trial.

[¶ 33] On appeal, Mr. Breazeale contends that the district court's ruling impinged upon his constitutional right to present his defense. We have previously observed that the "right to offer testimony is grounded in the Sixth Amendment Compulsory Process Clause and can be violated by imposition of a discovery sanction that excludes defense witness testimony." *Lawson*, 994 P.2d at 946, citing *Taylor v. Illinois*, 484 U.S. 400, 409–10, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). Applying this rule, we held that a trial court abused its discretion by excluding defense witnesses solely on the basis of a missed discovery deadline. *Dysthe v. State*, 2003 WY 20, ¶ 9, 63 P.3d 875, 881 (Wyo.2003). But while the right to present a defense may be "fundamental," it "is not absolute," and can be "outweighed by countervailing public interests." *Lawson*, 994 P.2d at 946.

The factors to be weighed in the balance include, but are not limited to those relevant to the "integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process."

*Id.*, quoting *Taylor*, 484 U.S. at 414–15, 108 S.Ct. at 656.

[¶ 34] In Mr. Breazeale's case, the three witnesses were not excluded because of a missed discovery deadline. The defense had missed deadlines for filing its notice, but the district court granted an extension, and the notice was filed by the extended deadline. Instead, the district court excluded the witnesses because the notice did not "state with particularity the facts upon which the defendant relies to justify the defense of unconsciousness," as required by W.R.Cr.P. 12.3(a).[2]

[¶ 35] Based upon our review of the record, we believe the district court's conclusion was reasonable. The notice filed by Mr. Breazeale stated that the witnesses "can provide information relating to the Defendant's seizure diagnosis and treatment," but provided no other details about the testimony they were expected to give. It listed the witnesses' names and addresses, but provided no information about their qualifications to provide medical testimony. The notice did not list any of the facts relied upon by the defense, but only indicated that such information could be found in Mr. Breazeale's medical records. As the district court observed, the parties knew from the beginning of the case that Mr. Breazeale claimed to have suffered a black out. Accordingly, the minimal information contained in the notice "was not new to anybody." Further, the district court said, a broad reference to medical records "is not particularly helpful" to the prosecution's efforts to respond to a defense of unconsciousness. Because the notice did not state with particularity the facts upon which Mr. Breazeale's defense was based, the district court reasonably determined that it did not comply with W.R.Cr.P. 12.3(a). Mr. Breazeale has not demonstrated that it was an abuse of discretion to rule that the three medical witnesses could not testify at trial.[3]

[¶ 36] Affirmed.

---

2. The district court actually cited W.R.Cr.P. 12.3(b), but when the comments are read in context, it is plain that the district court was relying on W.R.Cr.P. 12.3(a).

3. During trial, the prosecution presented evidence that Mr. Breazeale had performed computer searches for information on seizure disorders. The implication was that Mr. Breazeale used this information to fake or enhance his diagnosis. The district court ruled that the prosecution, by offering this evidence, had "opened the door" for Mr. Breazeale to present medical evidence about his seizure disorder. Countering its earlier ruling, the district court allowed one of Mr. Breazeale's doctors to testify. Both parties discuss this development at some length in their briefs, but we find that the district court's later ruling has no significance to the question of whether its initial decision to exclude the witnesses was an abuse of discretion.

Act, § 10(f), 29 U.S.C.A. § 160(f); West's Ann.Cal.Labor Code § 1160.8.