2006 WY 156

**JACKSON HOLE MOUNTAIN RESORT CORPORATION, Appellant (Defendant),**

v.

**Phillip ROHRMAN, Appellee (Plaintiff).**

No. 05–290.

Supreme Court of Wyoming.

Dec. 19, 2006.

Representing Appellant: Mikel L. Moore of Christensen, Moore, Cockrell, Cummings & Axelberg, P.C., Kalispell, MT; and James K. Lubing and Carter Wilkinson of Jackson, Wyoming.

Representing Appellee: W. Keith Goody of Alpine, Wyoming; and Robert E. Schroth of Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, and BURKE, JJ., and KAUTZ, D.J.

HILL, Justice.

[¶ 1]   By notice entered on December 20, 2005, this Court agreed to answer questions certified to us in accordance with Wyo. Stat. Ann. § 1–13–106 (LexisNexis 2005) and W.R.A.P. 11, by the United States District Court for the District of Wyoming, the Honorable William F. Downes presiding.   In our notice we designated Jackson Hole Mountain Resort (JHMR) as the Appellant.   Phillip Rohrman is the Appellee.

## THE CERTIFIED QUESTION

[¶ 2]   The question certified to us is this: When faced with motions for summary judgment in which there are no genuine issues of material fact, how should a court differentiate, as a matter of law, between "inherent risks" as defined in Wyo. Stat. Ann. § 1–1–122(a)(i) and employed in § 1–1–123(a) and (b), and non-inherent risks in order to determine whether a recreational provider has a duty to eliminate, alter or control the risk at issue?

[¶ 3]   Our general answer to the question is that if such a motion is filed, the trial court must scrutinize the facts brought forward by the parties with great care.   If the court can say that, given that evidence, this is an "inherent risk" and reasonable minds cannot differ about that, then summary judgment is appropriate. If the risk is an inherent one, then the provider has no duty to eliminate, alter, or control it.   On the other hand, if reasonable minds could differ as to whether or not the risk was one inherent to the recreational activity, then summary judgment is not appropriate and the answer to the question must be assigned to the jury (or other fact finder).

## STATEMENT OF ALLEGED FACTS RELEVANT TO

## THE QUESTION CERTIFIED

[¶ 4]   The federal district court set out these facts as relevant to the question posed:

This case arises out of a ski injury that Plaintiff, Phillip Rohrman, suffered on March 2, 2000 at Jackson Hole Mountain Resort (JHMR).   Mr. Rohrman is a resident of Colorado and [JHMR] is a Wyoming Corporation.   The case comes to this Court pursuant to 28 U.S.C. § 1332 diversity jurisdiction.   At the time of his injury, Mr. Rohrman was 24 years old and, by his own definition, an experienced skier. . . . He attempted to jump a "table top" jump in the JHMR terrain park.   He alleges that the jump was icier than he could have known from looking at it, and that because of the ice, he lost control and could not land the jump.   He suffered several breaks in his left arm and injuries to his thoracic spine. . . .

Two days before this accident, another young man, Adam Harshman, died of injuries sustained after taking off from the other side of the same jump.   Plaintiff alleges that JHMR had a duty to close the jump or warn of the dangers because they were not inherent risks of the sport.   Defendant JHMR asserts that losing control on a table top jump is a risk inherent in skiing terrain parks and therefore, JHMR owed Rohrman no duty.

[¶ 5]   In addition to this brief sketch of the facts, the parties have designated approximately 500 pages of depositions and other record materials as an appendix to the briefs to aid us in the analysis of this case. However, we take note that we are not placed in the role of fact finder here.   We perused the appendix materials with interest but we do not detail those facts here because they are not immediately pertinent to the question asked or the answer we give.

## DISCUSSION

[¶ 6] We set out the pertinent provisions of the Wyoming Recreational Safety Act (RSA) for convenience of reference:

**§ 1–1–122. Definitions.**

(a) As used in this act:

(i) "Inherent risk" with regard to any sport or recreational opportunity means those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity;

(ii) "Provider" means any person or governmental entity which for profit or otherwise, offers or conducts a sport or recreational opportunity. This act does not apply to a cause of action based upon the design or manufacture of sport or recreational equipment or products or safety equipment used incidental to or required by the sport or recreational opportunity;

(iii) "Sport or recreational opportunity" means commonly understood sporting activities including baseball, softball, football, soccer, basketball, swimming, hockey, dude ranching, nordic or alpine skiing, mountain climbing, river floating, hunting, fishing, backcountry trips, horseback riding and any other equine activity, snowmobiling and similar recreational opportunities; ...

**§ 1–1–123. Assumption of risk.**

(a) Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider wherein the damage, injury or death is not the result of an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1–1–109.

Wyo. Stat. Ann. §§ 1–1–122 and 1–1–123 (LexisNexis 2005).

[¶ 7] We recently decided a case that posed related issues, and we direct our readers' attention to it as background for this case. *Muller v. Jackson Hole Mtn. Resort,* 2006 WY 100, ¶ 14, 139 P.3d 1162, 1167 (Wyo. 2006). In *Muller* we said:

Under **Wyoming's statutory construct, which is much broader than that of Colorado, such items as those included in Colorado's statute may, as a matter of law, be inherent risks of the recreational activity of skiing** (in such cases a trial court may grant a motion to dismiss or a motion for summary judgment based on the RSA). Other items included in the list, and others that are not listed, and including the use or operation of ski lifts may, as a matter of fact, be "inherent risks" although those questions must be decided by the fact finder based on the evidence presented. See generally James H. Chalat, *Liability of Ski Area Operator for Skiing Accident,* 45 Am.Jur. POF3d 115, 150–51, § 17 (Broad judicial interpretation of inherent danger ski statutes as primary assumption of risk) (1998 and Supp.2005); also see Catherine Hansen–Stamp, *Recreational Injuries and Inherent Risks: Wyoming's Recreational Safety Act—An Update,* 33 Land & Water L.Rev. 249 (1998); also see *Halpern v. Wheeldon,* 890 P.2d 562, 566 (head note [9] ) (Wyo.1995); *Dunbar v. Jackson Hole Mountain Resort,* 392 F.3d 1145, 1148–53 (10th Cir.2004) (injuries suffered by skier in a terrain park that offered the most difficult skiing opportunities, which instant skier wished to avoid and asked a Resort employee for direction in order to avoid it, not an "inherent risk" as a matter of law but, rather, a question for the jury); and *Cooperman v. David,* 214 F.3d 1162 (10th Cir.2000) (loose saddle cinch an inherent risk of horseback riding as a matter of law). [Footnote omitted.] [Emphasis added.]

*Muller,* at ¶ 14, 139 P.3d at 1167.

[¶ 8] The general standard applied to the granting of a motion for summary judgment or a directed verdict in a negligence case is well known:

We are reminded of what was stated in *Loney v. Laramie Auto Co.,* 36 Wyo. 339, 354, 255 P. 350, 354, 53 A.L.R. 73, that: "The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. 20 R.C.L. 109, 166. That is true, even in a case where the testimony, as in the case at bar, is undisputed, if *different minds* may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men,[1] in the exercise of fair and impartial judgment, must agree upon them." And in 65 C.J.S., Negligence, § 252, p. 1129, it is stated that: "The question whether the conduct of defendant measured up to the standard of 'ordinary care,' 'reasonable prudence,' 'due diligence,' 'reasonable care,' or the like is usually to be determined by the jury under proper instructions." In *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 128 P. 460, 462, Ann.Cas.1914B, 29, the court in stating the rule as to the determination of negligence said: "It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men[1] can draw but one inference from them, that the question is ever one of law for the court." [Emphasis added.] *Templar v. Tongate,* 71 Wyo. 148, 255 P.2d 223, 230 (Wyo.1953); *McMackin v. Johnson County Healthcare,* 2003 WY 91, ¶ 8, 73 P.3d 1094, 1097 (Wyo.2003) ("If the evidence leads to conflicting interpretations or if *reasonable minds* might differ, summary judgment is improper" (citing *Wyoming Game and Fish v. Mills Company,* 701 P.2d 819, 821 (Wyo. 1985)) (emphasis added)); and see 57A Am. Jur.2d *Negligence* § 21 (2004).

■ [¶ 9] By this reference we do not intend to equate "inherent risk" with "negligence." However, the concept of "reasonableness" that is central to that time-honored test also functions well in this context. As we noted at the outset of this opinion, if reasonable minds cannot differ as to whether or not a given set of factual circumstances involve an "inherent risk" of skiing (in this

particular instance we are concerned with skiing, or fill in the blank as the case might be), then the protections of the RSA apply, and the litigation of that controversy must come to an end. However, we do not expect that all reasonable persons will carry around a complete knowledge of what the "inherent risks" of skiing are. We set out below several statutory sources that may assist in understanding what is intended by the phrase. We do not make reference to these statutes in an effort to construe Wyoming's statute under the traditional rules of statutory construction. Rather, we view them as a source of evidence to ascertain what the "inherent risks of skiing" are. The central concern here is what "reasonable persons" will view as inherent risks. Definitions of the "inherent risks of skiing" enacted by the legislators of states similarly situated to Wyoming are a potential source of guidance for both trial courts in acting on motions to dismiss/summary judgment, as well as for juries in their deliberations as to what is reasonable under the circumstances of any given case. These statutes are just one of many sources of such evidence, including safety experts and experienced skiers.

[¶ 10] We note as well that there are a significant number of cases that have as their central concern the meaning of "the inherent risks of skiing" (or fill in the blank, e.g., golf, judo, boxing, horseback riding). See, e.g., *Yoneda v. Tom,* 110 Hawai'i 367, 133 P.3d 796, 801–08 (Hawai'i 2006) (inherent risks of golf, but also collecting cases on a variety of recreational activities); *Maddocks v. Whitcomb,* 2006 ME 47, ¶¶ 4–10, 896 A.2d 265, 267–8 (Me.2006) (inherent risks of snow tubing); *Barrett v. Mount Brighton, Inc.,* 474 Mich. 1087, 712 N.W.2d 154 (Mich.2006) (snowboard rail an inherent risk of skiing as a matter of law); *Dunbar v. Jackson Hole Mtn. Resort Corp.,* 392 F.3d 1145, 1151 (10th Cir.2004) ("[W]e conclude that the district court erred when it found that the risk of falling twelve feet into a snowboard half-pipe was an inherent risk of Dunbar's alpine ski-

---

1. Although the phrase "reasonable man" has been used for decades, if not centuries, as a phrase of art in the law, it has in more recent times evolved into "reasonable person." See "reasonable person," *Black's Law Dictionary* 1294 (8th ed.2004). We will use the later convention except in those instances where "man" appears in quoted material.

ing when she had stopped and observed double diamond terrain features and had chosen not to 'take' those features[,]" but was unable to avoid them nonetheless.); *Gwyn v. Loon Mountain Corp.*, 350 F.3d 212, 215–17 (1st Cir.2003) (falls on icy slope that killed two and seriously injured a third, in one incident, were an inherent risk of skiing and not contributed to or caused by actions or inactions of operator; also noting that, with respect to "inherent risks," New Hampshire case law is slowly filling in the gaps but uncertainties remain).

[¶ 11] In *Muller* we made reference to the applicable Colorado statute and we set it out in detail here:

> (3.5) "Inherent dangers and risks of skiing" means those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, stream beds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities. The term "inherent dangers and risks of skiing" does not include the negligence of a ski area as set forth in section 33–44–104(2). Nothing in this section shall be construed to limit the liability of the ski area operator for injury caused by the use or operation of ski lifts.

Colo.Rev.Stat. Ann. § 33–44–103(3.5) (West 2006). In sections (3.1) and (3.3) of that same statute, "extreme terrain" and "freestyle terrain" are defined:

> (3.1) "Extreme terrain" means any place within the ski area boundary that contains cliffs with a minimum twenty-foot rise over a fifteen-foot run, and slopes with a minimum fifty-degree average pitch over a one-hundred-foot run.

> (3.3) "Freestyle terrain" includes, but is not limited to, terrain parks and terrain park features such as jumps, rails, fun boxes, and all other constructed and natural features, half-pipes, quarter-pipes, and freestyle-bump terrain.

[¶ 12] A similar statute from New Mexico, N.M. Stat. § 24–15–10 (2006), provides:

24–15–10. Duties of the skiers.

. . . .

> B. A person who takes part in the sport of skiing accepts as a matter of law the dangers inherent in that sport insofar as they are obvious and necessary. Each skier expressly assumes the risk of and legal responsibility for any injury to person or property which results from participation in the sport of skiing, in the skiing area, including any injury caused by the following: variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, or other forms of forest growth or debris; lift towers and components thereof, pole lines and snow-making equipment which are plainly visible or are plainly marked in accordance with the provisions of Section 24–15–7 NMSA 1978; except for any injuries to persons or property resulting from any breach of duty imposed upon ski area operators under the provisions of Sections 24–15–7 and 24–15–8 NMSA 1978. Therefore, each skier shall have the sole individual responsibility for knowing the range of his own ability to negotiate any slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability, to maintain reasonable control of speed and course at all times while skiing, to heed all posted warnings, to ski only on a skiing area designated by the ski area operator and to refrain from acting in a manner which may cause or contribute to the injury of anyone.

Utah Code Ann. § 78–27–52 (2006 Supp.) provides this definition:

As used in this act:

(1) "inherent risks of skiing" means those dangers or conditions which are an integral part of the sport of recreational, competitive, or professional skiing, including, but not limited to:

(a) changing weather conditions;

(b) snow or ice conditions as they exist or may change, such as hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, or machine-made snow;

(c) surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, trees, and other natural objects;

(d) variations or steepness in terrain, whether natural or as a result of slope design, snowmaking or grooming operations, and other terrain modifications such as terrain parks, and terrain features such as jumps, rails, fun boxes, and all other constructed and natural features such as half pipes, quarter pipes, or freestyle-bump terrain;

(e) impact with lift towers and other structures and their components such as signs, posts, fences or enclosures, hydrants, or water pipes;

(f) collisions with other skiers;

(g) participation in, or practicing or training for, competitions or special events; and

(h) the failure of a skier to ski within the skier's own ability.

[¶ 13] The statutes set out above are a meaningful source of guidance in explaining the "inherent risks of skiing" to any fact finder. Wyoming does not have any meaningful sources of legislative history and so we cannot ascertain with certainty what exactly was in our legislators' minds. However, we are comfortable that the definitions set out above are a source of reliable guidance in this regard and that the legislature would quickly respond if it concluded that our reference to the above-cited statutes was inaccurate. Of course, those statutes are not the exclusive source of guidance and the factual variations are, in some senses, infinite.

■ [¶ 14] We conclude that Wyo. Stat. Ann. §§ 34–19–101 through 34–19–107 (Lex-

isNexis 2005) are not applicable to this analysis and find no purpose for further discussion of them. Rohrman contends that Chapter 19, of Title 34, Liability of Owners of Land Used for Recreation Purposes, "imposes a duty of ordinary care upon landowners, regardless of the aforementioned recreational use exception." See *Addakai v. Witt,* 2001 WY 85, ¶¶ 17–26, 31 P.3d 70, 73–75 (Wyo. 2001). However, this contention is beyond the scope of the question we agreed to answer in this matter.

## CONCLUSION

[¶ 15] We conclude that if the facts are such that they are undisputed, and it is plain that all reasonable persons can draw but one inference from them (in light of the definitions and case interpretations set out above), then the trial court should either grant a properly filed motion for summary judgment or for directed verdict. However, if the facts do not reach that lofty bar, then the question is properly one for the jury to decide with the guidance of appropriate instructions (or for the trial court to decide, if trial is to the court).

HILL, J., delivered the opinion of the Court. BURKE, J., filed a specially concurring opinion with which KAUTZ, D.J., joined.

BURKE, Justice, specially concurring, with whom KAUTZ, District Judge, joins.

[¶ 16] I agree with the primary conclusion reached by the majority capsulized in the third paragraph of the opinion. I write separately because of concerns regarding the majority's conclusion that statutes defining "inherent risks of skiing" in Colorado, New Mexico, and Utah are a "potential source of guidance for both trial courts in acting on motions to dismiss/summary judgment, as well as for juries in their deliberations." The majority states that decisions regarding summary judgment must be determined "in light of the definitions" provided in statutes from those states. I am unaware of any tenet of statutory construction which justifies this approach. In determining whether a specific fact situation involves an inherent risk of a

recreational activity under Wyoming law, we must apply the definition enacted by the Wyoming legislature as set forth in Wyo. Stat. Ann. § 1–1–122(a)(i), not the definition deemed appropriate by legislatures of other states.

[¶ 17] The majority's reference to the Colorado statute as a source of guidance is particularly problematic. In *Muller*, we acknowledged that "Wyoming's statutory construct ... is much broader than that of Colorado" and recognized that ski lift operation is not an inherent risk of skiing as defined by the Colorado statutes. *Muller v. Jackson Hole Mtn. Resort*, 2006 WY 100, ¶¶ 13–14, 139 P.3d 1162, 1166–1167 (Wyo. 2006). We applied the Wyoming definition and held that the issue of whether ski lift operation was an inherent risk of skiing in Wyoming presented a fact question to be answered by the jury. *Muller*, ¶¶ 14, 19, 139 P.3d at 1167, 1168. In light of our holding in *Muller* that the Wyoming statute allows for the consideration of a wider assortment of facts in determining whether an inherent risk exists, the majority's reliance upon the Colorado statute is difficult to understand.

[¶ 18] If the Wyoming legislature deems it appropriate to revise its definition, the statutory definitions of inherent risk enacted by other states may be of interest and provide guidance to our legislature. Those statutes are not, however, a proper source of guidance for courts attempting to determine the meaning of inherent risk as stated in Wyo. Stat. Ann. § 1–1–122(a)(i).