2012 WY 62

**Marcia BECKWITH, Appellant (Plaintiff),**

v.

**Karl and Tina WEBER, husband and wife, dba Gros Ventre River Ranch, Appellees (Defendants).**

Nos. S–11–0101, S–11–0245.

Supreme Court of Wyoming.

April 25, 2012.

Representing Appellant: Gerard R. Bosch of Law Offices of Jerry Bosch, LLC, Wilson, Wyoming.

Representing Appellees: Katherine L. Mead of Mead & Mead, Jackson, Wyoming.

Before GOLDEN, HILL, VOIGT, and BURKE, JJ., and DAVIS, D.J.

DAVIS, District Judge.

[¶ 1] These consolidated appeals arise from a judgment on jury verdict in a case involving personal injuries suffered by Appellant Marcia Beckwith. She fell from a horse while on a trail ride operated by the Gros Ventre River Ranch in Grand Teton National Park. The jury found that Ms. Beckwith's injuries were the result of an inherent risk of horseback riding as defined by the Wyoming Recreation Safety Act, and she therefore recovered no damages for her injuries. In Case No. S–11–0101, Ms. Beckwith claims the district court erred in failing to instruct the jury as she requested. In Case No. S–11–0245, she claims the district court erred in awarding costs to Appellees due to her indigence. We affirm.

## ISSUES

[¶ 2] In Case No. S–11–0101, the issues are:

1. Did the District Court err when it declined to instruct the jury that a duty of care could arise from a contract and in refusing a verdict form which would have

asked the jury to determine if Appellees provided skilled guides?

2. Did the District Court err in declining to instruct the jury on the meaning of the terms "characteristic," "intrinsic," and "integral" as they are used to define the term "inherent risk" in the Wyoming Recreation Safety Act?

3. Did the District Court err in declining to instruct the jury that exculpatory clauses are to be strictly construed?

4. Did the District Court err in declining to instruct the jury that Appellant was exercising due care at the time she was injured?

[¶3] In Case No. S–11–0245, the issue is:

1. Did the District Court abuse its discretion in awarding costs to Appellees?

## FACTS

[¶4] The Gros Ventre River Ranch is a guest ranch located in Teton County. The ranch offers trail rides in Grand Teton National Park near the Gros Ventre River. Appellees Karl and Tina Weber are the owners of the ranch.

[¶5] Appellant Marcia Beckwith lives near Detroit, Michigan. In 1993 she began coming to the guest ranch annually with her companion, James Tasse, and continued to do so until she was injured in 2006.[1] She had no experience with horses other than that gained at the guest ranch. Ms. Beckwith and Mr. Tasse stayed at the ranch and usually rode daily for up to two weeks during their annual visits.

[¶6] The guest ranch offered guided trail rides of three levels of difficulty depending on whether the horses were walked, trotted, or loped. A walk is a slow four-beat gait. A trot is faster and occurs when the horse's diagonal hind and forelegs reach out and land at the same time. At a lope, a horse moves still faster, with a three-beat gait followed by a brief period of suspension with none of its hoofs touching the ground. Lope is the western term for what might be called a canter elsewhere. A horse's fastest gait is the gallop, which is a four-beat rhythm with legs further extended. The risk that the horse will fall or stumble and that the rider will fall or be thrown increases with the speed of the horse's gait.

[¶7] On the advanced ride, the horses loped for between 15 and 30 seconds. Ms. Beckwith participated in all of the levels over the years. She signed up for an advanced ride on July 20, 2006. She was required to sign a document entitled "Visitor's Acknowledgment of Risk (for Grand Teton National Park)." The record indicates that the form was used because the guest ranch was a concessionaire in the park. It provided as follows:

Although The Gros Ventre River Ranch has taken reasonable steps to provide you with appropriate equipment and skilled guides so you can enjoy an activity for which you may not be skilled, we wish to remind you this activity is not without risk. Certain risks cannot be eliminated without destroying the unique character of this activity. The same elements that contribute to the unique character of this activity can be causes of loss or damage to your equipment, or accidental injury, illness or in extreme cases, permanent trauma or death. We do not want to frighten you or reduce your enthusiasm for this activity, but we do think it is important for you to know in advance what to expect and be informed of the inherent risks. The following describes some, but not all, of those risks.

A horse, irrespective of its training and usual past behavior and characteristics, may act or react unpredictably at times, based upon instinct or fright, which is an I [sic] inherent risk assumed by a horseback rider. Unforeseeable actions by a horse may cause the rider to lose control of or fall off of the animal.

I am aware that horseback riding entails risks of injury or death to myself. I understand the description of these risks is not complete and that other unknown or unanticipated risks may result in injury or death. I agree to assume responsibility for the risks identified herein and those risks not specifically identified. My partic-

---

1. She returned to the ranch in 2007 but did not ride.

ipation in this activity is purely voluntary, no one is forcing me to participate, and I elect to participate in spite of the risks. I certify that I am fully capable of participating in this activity. Therefore, I assume full responsibility for myself, including my minor children, for bodily injury, death and loss of personal property and expenses thereof as a result of those inherent risks and dangers and of my negligence in participating in this activity.

I have read, understand [sic] and accepted the terms and conditions stated herein and acknowledge that this agreement shall be effective and binding upon myself, my heirs, assigns, personal representative and estate and for all members of my family, including any minors accompanying me.

[¶ 8] The reverse side of this document contained a "Rider's Application & Liability Agreement," which included the following:

I acknowledge that the use, handling and riding of a horse involves a risk of physical injury to any individual undertaking such activities. I expressly assume all inherent risks involved in the use, handling and riding of the horse, whether those risks are known or unknown. Inherent risks are those dangers or conditions that are characteristic of, intrinsic to, or an integral part of the use, handling and riding of a horse. Inherent risks include, but are not limited to:

(1) the propensity of the horse to behave in unpredictable ways, irrespective of its training and usual past behavior and characteristics, and to otherwise behave in ways that may result in injury, harm or death to person on or around them;

(2) the unpredictability of the reaction of a horse to sounds, sudden movement, and unfamiliar objects, persons, or other animals;

(3) certain hazards such as surface and subsurface conditions;

(4) collisions with other horses or objects;

(5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or others,

such as failing to maintain control over the animal or not acting within his or her ability.

I understand that Gros Ventre River Ranch, its officers, agents, employees, stockholders, and all other persons or entities associated with Gros Ventre River Ranch ... *are not* legally responsible for any and all damage, injury or death to me or other persons or property that results from the inherent risks that may arise from the use, handling and riding of the horse. I further understand that The Gros Ventre River Ranch is not required to eliminate, alter or control the inherent risks that arise from the use, handling and riding of the horse. [Emphasis in original.]

I hereby waive any claim against the Gros Ventre River Ranch and hold it harmless for any physical injury to myself, physical injury to others, or for property damages.

[¶ 9] Following the above language was a section entitled "Help Us Pick The Right Horse For You," which included a questionnaire concerning the rider's age, height, and riding ability. For the July 20, 2006, ride, Ms. Beckwith was assigned to Fox, a large horse she had ridden before and liked.

[¶ 10] During the course of the half-day trail ride, Ms. Beckwith fell or was thrown from Fox and suffered compression fractures and other damage to her cervical and lumbar spine. The evidence indicated that the group on the trail ride had loped their horses for a brief period of time, and that Fox stepped in a badger hole about the size of a basketball as or shortly after the trail guide signaled the group to slow from the lope to a walk. Ms. Beckwith was unable to stay in the saddle after her horse stepped in the hole.

[¶ 11] Ms. Beckwith claims that she was left at the scene with Mr. Tasse after the accident because the trail guide did not know what to do, and therefore started back to the ranch with the rest of the group at a walk, planning to send help when she got there. Mr. Tasse became concerned that the couple had no water and that there were bison and other potentially aggressive wildlife in the area where they had been left. He helped Ms. Beckwith walk to a nearby residence,

which was difficult for them because she was in considerable pain. From there they were able to use a telephone to summon help.

[¶ 12] In Case No. S–11–0101, Ms. Beckwith claimed that the ranch owners and their employees caused her injuries through negligence, and that their negligent acts were not inherent risks of horseback trail riding at a dude ranch. She identified the following acts of claimed negligence:

- The guide on the trail ride was not adequately trained.
- There should have been two trail guides instead of one.
- The horses should have had more space between them when loping than they did.
- Ms. Beckwith was not appropriately screened to determine her ability to participate in a trail ride that included loping.
- The area in which the ride took place was inappropriate for loping with a group of horses because of badger holes and other features which might cause a horse to stumble or fall.
- The ranch did not prepare its guides adequately for emergencies on its trail rides.
- The trail guides should have had some means of communicating with the ranch in the event that a participant was injured on the trail.

## PROCEEDINGS BELOW

[¶ 13] Appellees moved for summary judgment on the theory that the events which caused Appellant's injuries were as a matter of law inherent risks of horseback trail riding under the Wyoming Recreation Safety Act, Wyo. Stat. Ann. §§ 1–1–121 to 123. They also argued that the Rider's Application and Liability Agreement on the reverse side of the Visitor's Acknowledgment released all of Appellant's claims for personal injury. Ms. Beckwith responded that the negligent acts she identified were not inherent risks of the activity, and that the form

she signed did not release claims relating to the guest ranch's negligence.

[¶ 14] The district court denied the motion for summary judgment. It found that reasonable minds could differ as to whether Appellant's injury was "atypical, uncharacteristic, not intrinsic to, and thus not inherent" in the recreational activity of participating in a guided horseback ride. It therefore concluded that the issue of whether she was injured as the result of an inherent risk of horseback riding was a question to be resolved by the trier of fact. It also held that the Rider's Application and Liability Agreement waived liability only for risks inherent in the activity of horseback riding. In other words, a determination by the jury as to whether Ms. Beckwith suffered injury from something which was or was not an inherent risk of horseback riding would resolve both the Recreation Safety Act and release issues.

[¶ 15] The case was tried to a jury of twelve from November 15–19, 2010. Both parties called fact and expert witnesses during the trial. Ms. Beckwith sought to prove that her injuries resulted from acts of negligence which could not be considered inherent risks of horseback riding. Appellees strove to persuade the jury that her horse simply stumbled in a badger hole, which they claimed was an inherent risk of trail riding.

[¶ 16] At the jury instruction conference, Appellant's counsel argued that the Visitor's Acknowledgment of Risk contained a promise that Gros Ventre River Ranch had hired "skilled guides." The language Ms. Beckwith relied upon is this phrase:

> **Although The Gros Ventre River Ranch has taken reasonable steps to provide you with** appropriate equipment and **skilled guides so that you can enjoy an activity for which you may not be skilled,** we wish to remind you this activity is not without risk.... [Emphasis added.]

[¶ 17] Plaintiff offered a verdict form which would have required the jury to decide the following questions: [2]

2. Appellees argue that Appellant failed to submit an alternative verdict form. The proposed form was evidently not specifically offered and marked

as refused at the instruction conference, which would have been the common and better practice. However, the district court subsequently

1. Did the Defendant Gros Ventre River Ranch fail to provide skilled guides?

Yes ____ No ____

IF YOUR ANSWER IS "YES," GO TO QUESTION NO 3.

2. Did the Plaintiff's injuries result from an inherent risk of a half day guided trail ride provided by a dude ranch?

Yes ____ No ____

* * * *

3. Were Defendants Karl and Tina Weber d/b/a Gros Ventre River Ranch negligent?

Yes ____ No ____

* * * *

The verdict form as submitted would have taken the question of whether Appellant was injured as the result of an inherent risk of trail riding from the jury if it found that the ranch did not provide skilled guides.

[¶ 18] The district court commented as follows concerning Appellant's proposed verdict form:

THE COURT: All right. On the verdict—on the verdict form, [Appellant's counsel] will be quick to notice I did not start it off as he would have hoped I would have. I did start it off with the gatekeeping question looking at this case as an inherent risk case under the Recreational Safety Act and a negligence case.

And so I didn't give that first one, I started right off with whether they think this is an inherent risk and then go right into the negligence if they find it wasn't. And I think more or less the rest of it is pretty much—might be slightly, slightly different language, but it's more or less kind of how you each set it up with the negligence issues.

[¶ 19] Appellant's counsel made a timely objection to the district court's failure to use his proposed verdict form. He argued that the Visitor's Acknowledgment of Risk was a contract by which the guest ranch promised to provide skilled guides and that if it did not do so, it could not assert a defense of as-

filed Appellant's proposed instructions and verdict form, which had been in the court's possession. Because it is clear that the district court saw and rejected the verdict form proposed by

sumption of risk under the Wyoming Recreation Safety Act.

[¶ 20] The district court persisted in its ruling, which it further explained by stating that the case had been pled as one sounding in negligence, and that the contract duty of care theory had not been raised previously. Moreover, it concluded that allowing Ms. Beckwith to assert a new theory at that late stage of the case would be unfairly prejudicial to the defendants. It also found that the phrase Plaintiff relied upon did not create a duty which removed the case from the assumption of risk provisions of the Act. The verdict form the district court ultimately selected asked the jury to first determine whether Ms. Beckwith's injuries were caused by an inherent risk of a half-day guided trail ride provided by a dude ranch. If they were not, the jury would be required to answer questions concerning negligence, causation, and damages.

[¶ 21] Appellant's counsel also offered an instruction as to sources of a duty of care:

A duty may arise by contract, statute, common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. Authority: *Hatton v. Energy Electric Co.*, 148 P.3d 8, 151 WY 2006 [2006 WY 151] (Wyo.2006).

The district court rejected this instruction for the same reasons that it rejected Appellant's proposed verdict form It also noted that whether a duty of care exists or not is a question of law for the court and not an issue for the jury.

[¶ 22] Appellant also submitted an instruction which sought to explain the terms used to define the phrase "inherent risk" in Wyo. Stat. Ann. § 1–1–122(a)(i):

Characteristic is defined as belonging to or especially typical or distinctive of the character or essential nature of. Intrinsic means belonging to the inmost constitution or essential nature of a thing: essential or

Appellant and because we can identify it from the record, we will consider the issue on the merits.

inherent. Integral is defined as: of, relating to, or serving to form a whole: essential to completeness. Authority: *Cooperman v. David*, 214 F.3d 1162, 1173, 1186 [1165–66] (10th Cir.2000).

The district court held that the instruction was unnecessary because the words used in the statute each had a plain and ordinary meaning which did not require further definition, citing *Masias v. State*, 2010 WY 81, 233 P.3d 944 (Wyo.2010).

[¶ 23] Appellant offered other instructions which were refused, and she also challenges those rulings in this appeal. It is not necessary to discuss those instructions in detail at this point.

[¶ 24] In his closing argument, counsel for Appellant argued that the acts of negligence she had identified were not inherent risks of horseback riding. Counsel for Appellees argued as she had throughout the case that Appellant's injuries were caused by an inherent risk of trail riding on horseback.

[¶ 25] The jury returned its verdict on November 19, 2010. It answered only the first question as directed by the verdict form.

> We, the jury, duly empaneled and sworn in this case, do unanimously find as follows:
>
> 1. Did the Plaintiff's injuries result from an inherent risk of a guided horseback trail ride at a dude ranch?
>
> Yes __X__ No _____
>
> IF YOUR ANSWER IS "YES," DO NOT ANSWER ANY MORE QUESTIONS. Have the foreperson sign the verdict and deliver it to the bailiff. IF YOUR ANSWER IS "NO," GO TO THE NEXT QUESTION.

[¶ 26] The district court entered judgment on the jury's verdict on March 3, 2011. It awarded costs to Appellees in an unspecified amount. Appellant filed a timely notice of appeal in Case No. S–11–0101, raising the issues listed above.[3]

[¶ 27] On March 23, 2011, Appellees applied for $8,864.47 in costs under Wyoming Rule of Civil Procedure 54(d)(1) and Uniform

Rule of District Court 501. Appellant timely objected, disputing specific items claimed by Appellees, but also contending that no award of costs should be made because of (1) the financial condition of the Appellant, (2) the impact of the loss of this case on Appellant, (3) the financial ability of the Appellees' insurance company to pay the costs incurred in their defense, (4) the novelty, importance and closeness of the issues, and (5) the impact of the trial on Appellees. She subsequently filed financial information reflecting her annual earnings.

[¶ 28] The district court held a hearing related to the issue of costs on July 15, 2011, and issued an order awarding costs on August 31, 2011. It disallowed most of the costs claimed by Appellees, allowing them $3,707.65. It declined to deny Appellees all costs, noting that Appellant had identified no Wyoming case law supporting the denial of costs based on the considerations she argued, and that she had made no showing that she was in bankruptcy or completely incapable of paying costs. It held that in the absence of such an extreme showing it would decline to exempt her from the rule which generally allows for an award of costs to the prevailing party.

[¶ 29] Appellant timely appealed the ruling on costs in Case No. S–11–0245.

### STANDARD OF REVIEW

#### CASE NO. S–11–101

 [¶ 30] Appellant seeks review of the district court's decisions regarding a proposed verdict form and jury instructions. The following standards apply:

> It is the duty of the district court to provide instructions to a jury which clearly express the law in a manner sufficient to allow the jury to apply the correct law to the facts as they have determined them. *Baier v. State*, 891 P.2d 754, 756 (Wyo. 1995). A shortfall in those instructions which either misleads or confuses the jury will presage an injustice to the parties and require remand for a new trial. *Martinez*

---

3. Appellant also disputed the award of costs, which were not established at the time her notice of appeal was filed, and which therefore became the subject of Case No. S–11–0245.

*v. City of Cheyenne,* 791 P.2d 949, 960 (Wyo.1990).

It does not follow, however, that this court will impress a *de novo* review of jury instructions as we do with most questions of law. Rather, it is incumbent upon the party alleging mistaken instructions to demonstrate error. *Vasquez By and Through Vasquez v. Wal–Mart Stores, Inc.,* 913 P.2d 441, 443 (Wyo.1996). Prejudicial error is never presumed. *McWilliams v. Wilhelm By and Through Wilhelm,* 893 P.2d 1147, 1148 (Wyo.1995). The party alleging error must show that the instructions had a tendency to confuse or mislead the jury before this court will consider reversal. *Bigley v. Craven,* 769 P.2d 892, 895 (Wyo.1989). Our review of allegedly errant jury instructions proceeds in light of the instructions as a whole rather than singling out particular instructions in a piecemeal fashion. *Ellison v. State,* 3 P.3d 845, 849 (Wyo.2000).

Pursuant to W.R.C.P. 49, the submission of a particular form of special verdict is committed to the sound discretion of the trial court. *Turcq v. Shanahan,* 950 P.2d 47, 53 (Wyo.1997). It follows that reversal may only be predicated upon an abuse of that discretion. A party alleging error in a special verdict form must be vigilant. Failure to object to a special verdict form will not be considered on appeal if the complaining party failed to object or present their own alternative at trial. *Duffy v. Brown,* 708 P.2d 433, 439 (Wyo.1985).

*Addakai v. Witt,* 2001 WY 85, ¶¶ 14–16, 31 P.3d 70, 73 (Wyo.2001); *see also Loya v. Wyo. Partners of Jackson Hole, Inc.,* 2004 WY 123, ¶ 13, 99 P.3d 972, 977 (Wyo.2004).

▮▮▮▮ [¶ 31] As this Court has previously observed, claimed errors in instructions must be viewed in the context of the entire trial to determine whether they are prejudicial:

Errors of substantive law contained in the language of an instruction require reversal if the error is prejudicial. In reviewing the content of a challenged jury instruction, the charge is considered as a whole. To measure the degree of prejudice, jury instructions are viewed in the light of the

entire trial, including the allegations of the complaint, conflict in the evidence on critical issues and the arguments of counsel. The goal of our review is to determine if the charge presents a comprehensive, balanced and fundamentally accurate statement of the governing law to the jury. The charge is deemed adequate if it is not likely to confuse or mislead the jury. The fact that an instruction may have been more precisely drafted or drafted in a way more favorable to a party does not warrant reversal for a new trial.

*Betts v. Crawford,* 965 P.2d 680, 686 (Wyo. 1998) (quoting *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 832 (Wyo.1994) (citations omitted)).

## CASE NO. S–11–0245

▮▮▮▮ [¶ 32] A district court's award of costs is reviewed for an abuse of discretion. *Wilson v. Tyrrell,* 2011 WY 7, ¶ 58, 246 P.3d 265, 281 (Wyo.2011); *Meyer v. Hatto,* 2008 WY 153, ¶ 25, 198 P.3d 552, 557 (Wyo. 2008). To prevail, the party contesting the district court's ruling must show that the court "act[ed] in a manner which exceeds the bounds of reason under the circumstances." *Id.*

## DISCUSSION

### CASE NO. S–11–0101

#### *Verdict Form and Instruction on Sources of Duty of Care*

[¶ 33] Section 1–1–123 provides, in pertinent part, as follows:

(a) Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider wherein the damage, injury or death is not the result of an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1–1–109.

Wyo. Stat. Ann. § 1–1–123 (LexisNexis 2009).

[¶ 34] "Inherent risk" is defined as "those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. Ann. § 1–1–122 (LexisNexis 2009). The parties agreed that horseback riding at the Gros Ventre River Ranch qualified as a sport or recreational activity falling with the scope of the Act.

[¶ 35] This Court has previously held that the question of whether a particular risk is inherent in an activity covered by the Recreation Safety Act is generally one for the jury to decide. That decision can be made as matter of law on summary judgment only when the case involves undisputed facts and when reasonable persons could only conclude that an injury or death was caused by an inherent risk. *Jackson Hole Mtn. Resort Corp. v. Rohrman,* 2006 WY 156, ¶¶ 3, 15, 150 P.3d 167, 168, 172 (Wyo.2006); *Muller v. Jackson Hole Mtn. Resort,* 2006 WY 100, ¶ 14, 139 P.3d 1162, 1167 (Wyo.2006); *Halpern v. Wheeldon,* 890 P.2d 562, 566 (Wyo. 1995).

[¶ 36] As already explained, the district court interpreted the Visitor's Acknowledgement of Risk to release liability only for risks which were inherent in a horseback ride at a dude ranch. That decision has not been challenged on appeal. Its ruling anticipated that the jury's decision as to whether Ms. Beckwith's injuries were caused by an inherent risk of trail riding would resolve all issues relating to the applicability of both the Recreation Safety Act and the Rider's Application and Liability Agreement. If they were not, the claim would be barred by neither, and the jury could award damages if it found negligence, causation, and proven damages.

[¶ 37] Appellant disagrees with this approach. She argues that the language

"[a]lthough The Gros Ventre River Ranch has taken reasonable steps to provide you with appropriate equipment and skilled guides so you can enjoy an activity for which you may not be skilled" created an obligation to provide skilled guides, which somehow removed the case from the scope of the Act. The proffered verdict form would have directed the jury—upon finding that the guide involved in this case was not "skilled"—to proceed immediately to questions of negligence and damages, skipping over the question of whether Appellant was injured by an inherent risk of the trail ride. The proffered instruction stating that contracts may be a source of a duty of care would in her view have tied the "skilled guides" language to the question on the verdict form.

[¶ 38] Appellant points out that the United States District Court for the District of Wyoming dealt with a related issue in *Carden v. Kelly,* 175 F.Supp.2d 1318 (D.Wyo. 2001). That case also involved a fall from a horse, which occurred in the Bridger–Teton National Forest. The plaintiff argued that certain federal regulations preempted the Recreation Safety Act. An acknowledgement of risk was also involved, although its contents are not set out in the report of the case. The court in *Carden* held that the federal regulations did not preempt the Recreation Safety Act. *Id.* at 1326. It also observed that the defendants "did not undertake or engage in a contractual duty which could potentially conflict with the Wyoming Recreation Safety Act." *Id.*

[¶ 39] Building on this phrase in *Carden,* Appellant argues that the ranch agreed to do something (provide skilled guides) which would avoid limitations of the Recreation Safety Act, as well as the release language of the Rider's Application and Liability Agreement. She characterizes the Visitor's Acknowledgement of Risk as creating a duty of care rather than constituting a contractual guarantee of some kind. She contends that the district court should have adopted her verdict form, which would have taken the question of inherent risk from the jury if it believed the ranch had failed to provide the allegedly promised "skilled guides."

[¶ 40] There are a number of flaws in this argument. First of all, even if a duty of care could arise from the acknowledgment of risk form, the existence and scope of a duty are questions of law for the court, not for the jury, as the district court correctly ruled. *Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 10, 236 P.3d 1009, 1014 (Wyo.2010); *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo.2002).

[¶ 41] Secondly, one of the "settled rules of contract interpretation" is that a court must "begin with the language of the contract." *Wyo. Bd. of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 8, 185 P.3d 666, 668 (Wyo.2008). The words used in a contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Ins. Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the four corners of the document in arriving at the intent of the parties. *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo.2011) (quoting *Amoco Prod. Co. v. EM Nominee Partnership*, 2 P.3d 534, 540 (Wyo.2000)).

[¶ 42] The language Appellant relies upon simply does not say what she claims it means. It does not as a matter of law guarantee "skilled guides"—at most, it offers an assurance that the guest ranch used "reasonable efforts" to provide them. As the district court correctly held, neither the phrase in question nor the document as a whole can rationally be construed as a promise which somehow removed the case from the scope of the Recreation Safety Act.

[¶ 43] Throughout the trial, Appellant sought to prove and forcefully argued that the guide in charge when she was injured was not properly trained or adequately experienced. This amounted to a contention that the ranch was negligent because it had failed to provide an adequately skilled guide. Under the district court's ruling, that argument went to an issue entrusted to the jury and was entirely proper. However, by her verdict form, she asked the district court to go farther and to treat the language she refers to as some sort of guarantee which would have waived the benefit of the Recreation Safety Act and the exculpatory language of the Rider's Application and Liability Agreement.

[¶ 44] The district court correctly held that the "gatekeeping" question as to both the Act and the Visitor's Acknowledgement of Risk form was whether Ms. Beckwith's injuries were caused by an inherent risk of the activity. It did not abuse its discretion in refusing Appellant's proffered verdict form, which would have sidestepped a question properly entrusted to the jury. *Rohrman*, ¶¶ 3, 15, 150 P.3d at 168, 172. It likewise did not err in declining to instruct the jury on potential sources of duties of care, as that was a question of law.

### Further Definition of "Inherent Risk"

[¶ 45] Appellant also argues that the Court erred in failing to give her proposed instructions defining characteristic, intrinsic, and integral, which are words used by the legislature to define the term "inherent risk." The Court would first note that it must look at the instructions as a whole to determine whether they were adequate. *Addakai*, ¶ 15, 31 P.3d at 73. Neither party designated the instructions that were given as part of the record on appeal, and they are therefore not before us. A party seeking review of a district court's decision must provide an adequate record for appellate review, and failure to do so would justify this Court in declining to review this issue at all. *Nish v. Schaefer*, 2006 WY 85, ¶ 21, 138 P.3d 1134, 1142 (Wyo.2006); *Meyer v. Rodabaugh*, 982 P.2d 1242, 1244 n. 1 (Wyo.1999).

[¶ 46] However, it is possible to glean from the record and from what appears to be agreement in the briefs that the district court instructed the jury on the statutory definition of the term "inherent risk." As already stated, that term is defined by the Recreation Safety Act as "characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. Ann. § 1–1–122(a)(i). This Court has previously held that it is not necessary to define a term that does not have a technical or legal meaning different from that of its common meaning. *Masias v. State*, 2010 WY 81, ¶ 25,

233 P.3d 944, 951 (Wyo.2010); *Ewing v. State*, 2007 WY 78, ¶¶ 9–10, 157 P.3d 943, 946–47 (Wyo.2007).

[¶ 47] The legislature has defined the term "inherent risk." It used words which have a common meaning to do so. The district court did not err in declining to further define the language the legislature chose.

### Instruction Concerning Exculpatory Clause

[¶ 48] Appellant argues the district court should have given an instruction that exculpatory clauses such as those used in the Rider's Application and Liability Agreement must be strictly construed. We are once again hampered in our understanding of the totality of the instructions because they are not of record on this appeal, and because it is clear that the district court modified some of the parties' proposed instructions before they were given.

[¶ 49] However, it is clear from the record that the district court held that the exculpatory clause applied only to inherent risks of the trail ride, making its scope coterminous with the coverage of the Recreation Safety Act, and that it instructed the jury to that effect. That ruling has not been appealed. *Knight v. TCB Constr. & Design, LLC*, 2011 WY 27, ¶ 15, 248 P.3d 178, 183 (Wyo. 2011); *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo.1993).

[¶ 50] A claimed error which could not affect the outcome of a case cannot be the basis for a successful appeal. *DeJulio v. Foster*, 715 P.2d 182, 187 (Wyo.1986); *Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1176 (10th Cir.2001). The jury was adequately instructed that the Rider's Application and Liability Agreement did not pertain to anything other than an inherent risk of horseback trail riding. That term was defined consistently with the Recreation Safety Act in other instructions to which there was no objection. The district court had already construed the exculpatory language narrowly and limited the jury's use of it by the instructions it gave. The proffered instruction would have been superfluous and failure to give it could not

have been prejudicial or have affected the outcome.

### Presumption of Due Care

[¶ 51] Appellant also offered an instruction which would have informed the jury that she was presumed to have been using due care when she was injured. Such instructions have been given in certain wrongful death cases because the decedent cannot testify. *DeJulio*, 715 P.2d at 186–87; *Gish v. Colson*, 475 P.2d 717 (Wyo.1970). Appellant cites no authority for the proposition that such an instruction should be given in a case involving a living plaintiff and eyewitnesses to her fall from the horse.

[¶ 52] In any event, Appellees abandoned their defense of contributory fault before the case was submitted to the jury. Moreover, because the jury found that the fall that caused Appellant's injuries was the result of an inherent risk of horseback riding, it did not reach any issue of negligence. This claimed error therefore could not have affected the outcome of the case, and cannot be a basis for overturning the jury's verdict. *DeJulio*, 715 P.2d at 186–87; *Nalder*, 254 F.3d at 1176.

### CASE NO. S–11–0245

[¶ 53] Appellant argues that the district court abused its discretion in awarding costs to Appellees. Wyoming Rule of Civil Procedure 54(d)(1) provides in pertinent part that "[e]xcept when express provision therefore is made either in a statute or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."

[¶ 54] The award of costs under Rule 54(d) rests within the sound discretion of the district court. *Bellis v. Kersey*, 2010 WY 138, ¶ 23, 241 P.3d 818, 825 (Wyo.2010); *Snyder v. Lovercheck*, 2001 WY 64, ¶ 6, 27 P.3d 695, 697 (Wyo.2001); *Abraham v. Andrews Trucking Co.*, 893 P.2d 1156, 1158 (Wyo.1995); *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158, 168 (Wyo.1989). The award must be reasonable under the circumstances, and the ruling must be neither arbitrary nor capricious. *Bellis*, ¶ 23, 241 P.3d at

825. "Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law." *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993).

[¶ 55] Appellant argues that the district court should have denied Appellees all costs based on the four factors set forth above. She argues that she is either indigent or nearly so, that the Appellees are wealthy, and that in any event their costs were paid by their insurance carrier.

[¶ 56] Appellant relies upon *Badillo v. Central Steel and Wire Co.*, 717 F.2d 1160, 1165 (7th Cir.1983) (the presumption in favor of awarding costs may be overcome by a showing of indigence), *Maldonado v. Parasole*, 66 F.R.D. 388, 390 (E.D.N.Y.1975); and *Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79 (E.D.N.Y.1971) (indigence is a proper ground for denying costs in cases in which there is a wide disparity of economic resources). She also argues that she pursued her claims in good faith, which should also be taken into consideration along with the economic disparity of the parties, citing *Schaulis v. CTB/McGraw–Hill, Inc.*, 496 F.Supp. 666 (N.D.Cal.1980). Finally, she argues that imposition of costs in the circumstances of this case would have a chilling effect on the willingness of litigants to seek their legal remedies.

[¶ 57] The district court considered Appellant's arguments. The record before it showed that Ms. Beckwith had a small annual income of between $829.77 and $14,281.85 over a five-year period from 2006 to 2010. The record did not show that she was suffering from extreme poverty, the usual definition of indigence. The district court was aware from the evidence at trial that Ms. Beckwith and her companion had the resources to pay to spend up to two weeks at a guest ranch annually. It also heard trial testimony which indicated that she was not so disabled that she could not engage in gainful employment. In addition, the court took a sharp pencil to Appellees' claim for costs, reducing it by over 50 percent.

[¶ 58] We do not find it necessary to determine whether a district court should consider the factors argued by the Appellant. The district court did in fact consider her arguments and rejected them. Its decision was by no means beyond the bounds of reason, and it did not result from an error of law. The Court therefore cannot find it to be arbitrary or capricious.

## CONCLUSION

[¶ 59] The district court properly instructed the jury as to Appellant's claims, and also provided an appropriate form of special verdict for the jury's use. The award of costs it made was not an abuse of discretion. The judgment of the district court and its order awarding costs are therefore affirmed.